AIMEE K. BRITE, *et vir*, v. ORANGE BELT SECURITIES CO.

182 So. 892.
Opinion Filed June 8, 1938.
Rehearing Denied July 25, 1938.

*Duncan, Hamlin & Duncan* and *John S. Lavin,* for Appellee.

PER CURIAM.—The Orange Belt Securities Company, Plaintiff below, filed two bills of complaint for the purpose of charging in equity two tracts of land, the separate property of Mrs. Aimee K. Brite, a married woman, the claim being based upon separate written agreements made between her and the Securities Company for the care, cultivation,, and fertilization of Orange Groves growing upon said lands. The bills are identical except those parts describing the date of the agreement, the land sought to be. charged, and the itemized statement setting out the amounts claimed.

Upon motion of the defendants, these causes were ordered consolidated and afterwards proceeded as one action.

The first Bill alleges that on January 4, 1927, a contract bearing the following provision was entered into between the parties:

"The said second party (Amiee K. Brite) shall pay on demand cost of spraying, spraying material and fertilizer when and as applied, which material shall be ordered by the said first party for the said second party and shall apply same in a proper manner when and as needed."

It is further alleged that all amounts due under the contract up to and including Nov. 30, 1930, had been paid but since that date the said Defendant had become indebted $1913.93, which sum was past due and unpaid.

The second Bill alleges that an identical contract was entered into by the same parties on February 24, 1928, for the cultivation and care of Citrus groves on another piece of land owned by Mrs. Brite and that up to Oct. 31, 1929, the defendant paid in full all moneys due under the contract but that since that date she had failed and refused to make any of the payments due under the agreement and that the last statement rendered before the filing of this Bill showed an amount of $1,718.26 due.

It appears from the itemized statements attached to each of the Bills that various items of interest, aggregating $141.94 under the first contract and $170.16 under the second contract, were claimed. The agreements are silent as to the payment of interest on delinquent payments.

Defendants filed a Motion to Dismiss the bill for want of equity and upon the further grounds that the bill sought to charge the separate property of the Defendant, a married woman, with interest without showing an equitable basis for such charge. Defendants also filed a motion to strike

the items of interest upon the principal ground that the bill failed to set forth any matter in law or Equity sufficient to charge Defendants with the payment of interest. Both motions were overruled.

Defendants then filed their answer denying the accuracy of the itemized accounts, asserting that they did not represent the true cost of the fertilizer and spraying materials used: and by way of affirmative relief asked for an accounting for the years 1927, 1928, 1929 and 1930.

An Examiner was appointed and testimony taken. Defendants then filed a motion for the entry of an order requiring Plaintiff to render and submit to the Court an accounting for the above mentioned years.

Defendants filed an amended answer on June 7, 1935. Paragraphs 7, 8 and 9 were struck on motion of the Plaintiff. These paragraphs set up a detailed account of the financial transactions between the parties under the Contract prior to December 31st, 1932, and alleged that the charges did not represent the cost to the plaintiff of the fertilizer, spraying and spraying material but contained costs of hauling these materials, maintenance of trucks, wages of men engaged in loading and unloading, etc., and that the Plaintiff had falsely and fraudulently represented the charges to be according to the contract, and that payments were made upon reliance that these representations were true and asking for an accounting.

Upon motion the counter-claim contained in the Defendants' amended answer was dismissed. It was stipulated by the parties that ten per cent would be a reasonable attorney's fee, if Plaintiff was entitled to recover attorney's fees.

At the final hearing the Court found that the Plaintiff was not entitled to any charge for pruning the trees as that

charge was covered by the flat contractual charge for cultivation contained in each contract; and that the Plaintiff, Orange Belt Securities Company, has established a *prima facie* case in support of the charges made and claimed in its respective Bills of Complaint for the costs of various items of labor performed and material furnished upon the respective groves in question as and when performed or applied; that Defendants had successfully rebutted this *prima facie* case as to the cost of the materials reflected by invoices; the Plaintiff having failed to satisfactorily show to the Court the difference between the prime or invoice cost of the material and the cost of the same when and as applied; that in accordance with these findings the separate property of Aimee K. Brite, described in the first contract, is charged in Equity for the sum of $2,061.18, which sum includes interest on the delinquent accounts and this property is further charged $206.12 as attorney's fees; that the separate property of Aimee K. Brite, described in the second contract is charged in Equity for the sum of $2,086.96, which sum includes interest and this property was further charged for $208.70 as attorney's fees. It was ordered that the aforesaid amounts be paid, with one-half of the costs of this suit, within three (3) days and in default of payment the premises described shall be charged in equity and sold at public outcry.

The second and third assignments of error are that the Court erred in denying the motion of the defendants for an accounting and entering its order striking certain paragraphs of the amended answer and dismissing the counterclaim contained therein.

The Defendants sought to require the Plaintiff to render an accounting of the transactions occurring under the contract prior to the time when the first moneys for which the plaintiff brings suit fell due under the respective contracts.

These transactions consisted of settled accounts between the parties. The original answer alleged that the Defendant was ignorant of the charges made against her for the maintenance of each of the groves for the year stated and the proper amount that should be credited to her account from the sales of the fruit grown upon the lands. Neither fraud nor mistake was alleged, and the allegations of the original answer were clearly insufficient to justify opening up these settled accounts.

The Defendants' amended answer was filed on the 6th of June, 1935, and paragraphs 7, 8 and 9 sought to impeach these settled accounts. This effort to open up these settled accounts occurred four years and six months after settlement in one case and five years and seven months had elapsed since settlement in the other case.

We are of the opinion that a sufficient showing of fraud is not made out by the facts alleged in these stricken paragraphs and that the Chancellor was justified in refusing to open these accounts after the defendants had acquiesced for such a long period of time. Apparently the main objection to the accounts was the fact that defendant was not charged the invoice "cost" of the goods but that costs of freight, costs of trucking, wages of the men who handled the fertilizer at the warehouse and wages of the men who loaded it on the truck, etc., were all considered in arriving at the cost of the fertilizer and other materials, "when and as applied." The Chancellor rightly sustained this interpretation of the Contract in his final decree but did not allow these items on the accounts sued for because the Plaintiff "failed to satisfactorily show to the Court the difference between the prime or invoice cost of such material and the cost of the same when and as applied." It does not appear that there was any "fraud" but only that

the Plaintiff did not completely meet his burden of proving the amounts claimed.

Settled accounts can be reopened only on a strong showing of fraud or mistake. We are of the opinion that such a showing was not made and that the Court did not err, especially in view of the fact that the Defendant delayed so long in seeking this relief. As was said by Chief Justice Marshall in his opinion rendered in the case of Chappedelaine and Closrivierre v. Dechenaux, 4 Cranch 306, 2 L. Ed. 629, "No Practice could be more dangerous than that of opening accounts which the parties themselves have adjusted, on suggestion supported by doubtful or by only probable testimony."

The second question raised on this appeal is predicated on that part of the Chancellor's decree charging the defendant married woman's separate property with attorney fees.

Under Article XI, Section 2, of the Constitution of Florida, a married woman's separate property can be charged in Equity only in the following instances:

"A married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her; or for labor or material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent."

Attorney's fees can not be charged, as a general rule in the absence of statutory authority, unless the defendant is bound for their payment by contract. As stated in 15 C. J. 114:

"The general rule requires each party to the litigation to pay his own counsel fees. Attorney's fees are not allowable in the absence of a statute or in the absence of some agreement or stipulation specifically authorizing the allowance thereof, and it has been held that the rule applies equally in Courts of law and in Courts of Equity."

There is no statute in this state providing for the assessment of attorney's fees in favor of the prevailing party, in such cases as the one under consideration, and so the sole basis for such claim is the following provision of the Contract:

"Seventh: It is further agreed that in the event second party, his heirs or assigns, shall be in default for a period of thirty days in the payment of any of the sums that shall fall due under the terms of this agreement, that first party shall be entitled to a lien on said property for such amount as shall be due, and in event it shall become necessary to place said claim or lien in the hands of an attorney for collection, that second party hereby covenants to pay a reasonable attorney's fee for the collection thereof, together with all costs, * * *."

This provision for attorney's fees is clearly a penalty and is not "for the benefit of her (Mrs. Brite's) separate property." The Constitution does not contemplate charging the separate property of a married woman in equity for the attorney's fees of the prevailing party, and so the written contract of a married woman, containing the above quoted provision for attorney's fees, is insufficient to charge her separate property, in view of the limitations of Sec. 2, Article XI, of the Constitution.

There was no allegation in the bill of complaint and no proof was offered that the plaintiff had paid, or obligated itself to pay, to its solicitors, any fixed or determinable sum.

It is true that the parties entered into a stipulation that "in the event it be determined that the plaintiff would be entitled to recover attorneys' fees, ten per cent. of the total amount of the principal and interest recoverable by plaintiff in this cause shall be a reasonable attorneys' fee," and that the contract was made a part of the bill of complaint by reference, but this does not justify the Chancellor in awarding attorney's fees where they are not specially prayed for and where there are no allegations in the bill nor proof offered to establish that the plaintiff has paid or obligated itself to pay, to its solicitors, any fixed or determinable sum. See Brett v. First Nat. Bank of Marianna, 97 Fla. 284, 120 So. 554. It does not appear that the appellants have waived their right, by this stipulation, to object to the allowance of these fees.

The fourth assignment of error was:

"4. That the Court erred in making and entering its Final Decree of June 22nd, 1936, as the same was made and entered."

This assignment was sufficient to bring the question of attorney's fees before this Court for a determination on this appeal.

For the reasons stated above, the Court erred in allowing attorney's fees to be assessed against the married woman, Mrs. Aimee Brite, appellant herein.

Appellants next contend that the Court erred in refusing to strike the items of interest from the itemized statements attached to the Bills of Complaint, and in overruling the Motion to Dismiss the Bill because of the claim for interest, and in entering a decree allowing interest on the various items from the date they became due and were demanded.

We find this proposition of law in 17 C. J. 818: Interest as an element of damage for a breach of a contract to

pay money is awarded from the time of default which may be fixed by the time specified, or by the making of a demand.

The Supreme Court of the United States in Brigham Young, Trustee, v. Godbe, 15 Wall. 562, 21 L. Ed. 250, long ago recognized that interest is allowable on an overdue account:

"If a debt ought to be paid at a particular time, and is not, owing to the default of the debtor, the creditor is entitled to interest from that time by way of compensation for the delay in payment. And if account be stated, as the evidence went to show was the case here, interest begins to run at once." See also Cooper v. Coates, 21 Wall. 105, 22 L. Ed. 481.

The testimony reveals that monthly statements were rendered to Mrs. Brite under the contract and that she made no objection to the accounts rendered until after the institution of this suit.

As far back as Milton v. Blackshear, 8 Fla. 21, text 24, this Court held:

"It is laid down in 1 American Leading Cases, page 498, that 'in this country, the general principle has long been settled, that if a debt ought to be paid at a particular time, and it is not then paid through the default of the debtor, compensation in damages equal to the value of the money, which is the legal interest upon it, shall be paid during such time as the party is in default. Interest is considered as incident, legally, to every debt certain in amount, and payable at a certain time.'

"Mr. Perkins, in a note to his recent edition of Chitty on Contracts, (page 558 note) says: 'But according to the American authorities, interest will be allowed after a demand of payment of an unsettled claim for goods sold and

delivered, or services rendered, from the time of the demand; and a presentment of the account, or commencement of suit, is sufficient demand upon which to found, and from which to date a claim for interest.'

"* * *, we are inclined to hold that in all cases where the demand sued for is a debt *eo nomine,* in contradistinction to unliquidated damages, interest is allowable thereon from the time when the same becomes legally due and payable; and when no such time is ascertainable, then interest is allowable only from the date of an actual demand of payment, or of the commencement of the suit."

See also Shoup v. Waites, 91 Fla. 378, 107 So. 769, and Treadway v. Terrall, 158 S. 512, 117 Fla. 838; and Sullavan v. McMillan, 19 So. 340, 37 Fla. 134, text 145, where this court quoted the Alabama Supreme Court as follows:

"In State v. Lott, 69 Fla. 147, it is said: 'Interest in this State has long been regarded, not as the mere incident of a debt, attaching only to contracts, express or implied, for the payment of money, but as compensation for the use or for the detention of money. Whenever it is ascertained that at a particular time money ought to have been paid, whether in satisfaction of a debt, or as compensation for a breach of duty, or for a failure to keep a contract, interest attaches as an incident.' "

Having determined that interest is generally allowed in such cases as the one under consideration there remains only the question of whether such interest may be charged against the separate property of a married woman.

This Court has frequently allowed interest to be assessed against a married woman's separate property. See McGill v. Art Stone Const. Co., 57 Fla. 498, 49 So. 539; Garvin v. Watkins, 29 Fla. 151, 10 So. 818; Hoffman Const. Co. v. Ward, *et al.,* 97 Fla. 530, 121 So. 800; McMillan, *et al.,* v. Warren, 59 Fla. 578, 52 So. 825.

The Appellant, Mrs. Aimee K. Brite, was competent to enter into the written agreements for the cultivation of orange groves on her separate property, and under Section 2, Article XI, of the Constitution her separate property may be charged in Equity and sold "for money or thing due upon any agreement made by her in writing for the benefit of her separate property."

As a claim for interest is a legal incident to a claim for amounts past due and unpaid, it is obvious that if the law allows a married woman to enter into such contracts for material and labor and bind herself to pay for the same at certain designated dates, then she must likewise answer for her defaults in payment. If such were not the case the Court would be placed in the doubtful position of saying that a married woman could make a contract for a specified purpose but could breach it with impunity.

It does not appear that the interest claimed, based upon the itemized statement attached to the bills of complaint, was usurious. However, no objection was made to the interest on this ground and the only testimony relative to the rate of interest charged in the itemized accounts, establishes that the interest claimed was at the rate of 8% on the principal claimed.

Sec. 6936, Compiled General Laws of Florida, 1927, provides: "In all cases where interest shall accrue without a special contract for the rate thereof, the rate shall be eight per cent. per annum, but parties may contract for a less or greater rate by contract in writing."

The Court has carefully considered the assignments of error, the questions raised in the briefs, and arguments thereon, and it is our conclusion that no error is made to appear other than the assessment of attorneys' fees against appellants.

278

The case is remanded with directions to the Chancellor to enter a final decree in accordance with this opinion.

WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.