The TRAVELERS INDEMNITY COMPANY, Plaintiff-Appellee-Cross Appellant,

v.

PEACOCK CONSTRUCTION COMPANY et al., Defendants-Appellants-Cross Appellees,

v.

SECURITY INSURANCE COMPANY, Defendant-Appellee-Cross Appellant.

No. 27682.

United States Court of Appeals, Fifth Circuit.

Feb. 27, 1970.

Joseph F. Jennings, Dixon, Bradford, Williams, McKay & Kimbrell, P. A., Miami, Fla., for appellants-cross-appellees.

Earl D. Waldin, Jr., Harry L. Durant, Miami, Fla., for Security Ins.

Smathers & Thompson, Joseph A. McGowan, Miami, Fla., Bernstein & Sherr, Sarasota, Fla., for FMC Corp.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and MORGAN, Circuit Judges.

### JOHN R. BROWN, Chief Judge:

In this multi-party donnybrook, see Grigsby v. Coastal Marine Service, 5 Cir., 1969, 412 F.2d 1011, 1015, with each turning in part on the other, the surety for the subcontractor sought from the general contractor and its surety payment of the balance of the subcontract price plus interest and statutory attorney fees, and in reconvention the general contractor sought by offset or recovery damages and chargebacks for subcontractor's breach, and the surety for the general contractor sought exoneration from its principal and contractual indemnitors. All win and lose in part. None is satisfied. Each appeals but by our affirmance each grievance goes unrequited.[1]

In 1965 Peacock entered into a contract with Camay for the construction of a shopping center. Peacock furnished to Camay a Labor and Material Payment Bond with Security as surety. Peacock subcontracted the plumbing and air-conditioning work to Murray's, which furnished to Peacock a Performance and Payment Surety Bond with Travelers as surety. Subsequently, Murray's defaulted and Peacock called upon Travelers to perform under the terms of its bond. Travelers, partially through Peacock and another subcontractor, completed the subcontract.

Travelers brought this diversity action to determine its liability under the subcontract and to recover the balance due from Peacock. Security was joined as a party defendant and attorney fees were sought by Travelers against Security pursuant to Florida statutes. Security in turn sought exoneration from Peacock, its principal, and indemnity (including attorney fees) from the indemnitors.

The Trial Court, sitting without a jury, determined that there was an unpaid balance due under the Murray subcontract of $63,449.80, against which Peacock was entitled to set-offs totaling $28,164.73, and that there was therefore due to Travelers the sum of $35,285.07, and awarded judgment to Travelers against Peacock and Security for this amount. The Court also awarded judgment in favor of Security against Peacock for exoneration and the indemnitors for this same amount plus interest and contractual attorney fees of $4500.

The Court denied Travelers' claim for (a) statutory attorney fees against Security and (b) for interest on the net sum ($35,285.07) found due on the subcontract from the completion date. It also denied Peacock's claim for damages and back charges for the period prior to

---

1. The cast of characters is:
   Owner of building: Camay Realty.
   General Contractor: Peacock Construction Co.
   Surety for General Contractor: Security Insurance Co. (successor to New Amsterdam Casualty Co.).

   General Contractor's Surety's Indemnitors: Camay Realty, and two Peacocks individually.
   Subcontractor: Murray's Plumbing and Heating Co.
   Surety for Subcontractor: Travelers Indemnity Co.

January 5, 1966 in excess of the amount set forth in a letter from Peacock to Travelers listing back charges. The Court likewise denied Security's claim for contractual attorney fees in excess of $4500.00.

Security and Peacock appeal the final judgment of $35,285.07 against them. Travelers appeals the failure to award attorney fees and interest on its judgment. Security appeals from denial of attorney fees as claimed. We agree with the Trial Judge and affirm.

## 1. Peacock-Security Attack on Travelers' Recovery

### A. Deficiency of Travelers' Proof

Peacock, joined by Security, contends that Travelers failed properly to prove that it paid any sums to materialmen or laborers dealing with Murray's, and any claim of Travelers based on such payments must fail.

The argument boils down to this. Although the Court found that in completing Murray's subcontract Travelers expended far in excess of the gross or net amount allowed,[2] there was no direct proof that various suppliers, materialmen or laborers paid off by Travelers actually furnished any such materials, etc. This was shown only by hearsay from summaries reflecting the amount paid and the payees.

Closely akin to this attack Security makes one of its own by urging that as between two compensated sureties there may be no recovery and certainly not without proving (i) requisite notice by each materialman-supplier, (ii) standing by Travelers as a "claimant"[3] under Security's bond and (iii) compliance with the notice provisions by claimants.[4]

But these misconceive the whole nature of this proceeding—Travelers claiming by subrogation the rights of Murray's to payment of the contract price on completion of the subcontract. Travelers stands as the subcontractor, not as a supplier to the subcontractor. This both satisfied the status as "claimant" under the bond (see note 3, *supra*) and eliminated necessity of proof of any specific payment by Travelers or notice by suppliers (see note 4, *supra*).[5]

Quite without regard to the surety's subrogation to the rights of the obligee and the creditor where needed, Prairie State National Bank v. United States, 1896, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Pearlman v. Reliance Ins. Co., 1962, 371 U.S. 132, 138, 83 S.Ct. 232, 235, 9 L.Ed.2d 190, 194, under the most rudimentary principles the surety succeeds to its principal's right to payment upon completion of the contract. United Pacific Insurance Co. v. United States, 1966, 362 F.2d 805, 176 Ct.Cl. 176; Midtown Bank of Miami v. Travelers In-

---

2. The Trial Court on ample evidence found that Travelers' expenditures in completing the job and paying the suppliers totaled $170,279.

3. Under the bond Security's obligation of payment extends only to "claimants· as hereinafter defined." The bond defines a claimant to include "one having a direct contract with the Principal [Peacock] * * * for labor, material, or both * * *."

4. Paragraph 3(a) of the bond provides:
   "(3) No suit or action shall be commenced hereunder by any claimant,
   (a) Unless claimant, *other than one having direct contract with the Principal*, shall have given written notice to any two of the following: the Principal, the own-

er, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made * * *." (Emphasis added.)

5. There is no problem of competing equities to insufficient funds in the hands of the general contractor which might raise equitable problems on the dollar extent to which Travelers might fairly succeed to the subcontractor's rights to full payment upon completion.
   Additionally, of the $170,279.00, (see note 2, *supra*) there was unquestioned direct proof that Travelers paid $40,449.00 to McGilvray, a contractor employed to complete the job for it. This exceeded the net found due of $35,285.07.

demnity Co., 5 Cir., 1966, 366 F.2d 459, 462; 11 Appleman, Insurance Law and Practice § 6501 (1944). Thus Travelers can recover under the bond even though it is not a "claimant" as defined therein because its subrogor was such a claimant. Nor did Travelers have to provide the notice required of non-direct contracting parties since its subrogor was a direct contractor, of whom no notice is required.

## B. Inadequacy of Set-Offs to Peacock

The Court found that there was owing $63,449.80 on Murray's subcontract. It allowed set-offs of $28,164.73, for a net recovery by Travelers of $35,285.07, the basic correctness of which we have approved in part A above. Falling back to a secondary defense, Peacock-Security claim that the net amount is too great because credits were too small. This zeros in on two main items.

As the first, they contend that Peacock is entitled to a set-off for back charges beyond the $4,690.37 allowed. In denying more the Trial Court held that Peacock was estopped from claiming more than this because it had previously claimed by letter to Travelers only this amount. Peacock argues that the Court erred in finding it estopped because estoppel was not affirmatively pleaded.[6] But we do not read these words with such rigidity. It is clear that the Trial Judge's finding of estoppel was just another way of saying that he, as the trier of fact, believed that the amount originally claimed by letter to Travelers rather than the greater amount claimed at trial was the true extent of Peacock's back charges.[7]

The second item is for damages due to delay. Peacock contends that since the Trial Judge found that some delay in the completion date of the entire project was caused by Murray's breach, he erred in not allowing damages for extra supervisory personnel needed to make up time, the reasonable rental value of equipment which could not be used on the site until Murray's contract had been fulfilled, loss of efficiency due to delay, and overtime payments. The Trial Court concluded that Murray's contributed to the delay in completing the project, and that as a result of the delay in completing the project, Peacock suffered damage in the manners claimed. But the Judge went on to state that "because of the many contributing factors shown for the delay * * * the Court could not ascertain the amount of damages due Peacock from Murray's other than through the process of mere speculation or conjecture." On this complex record this finding is not clearly erroneous. F.R.Civ.P. 52(a). And because "before damages may be awarded there must be evidence authorizing or justifying the award of a definite amount, which cannot be predicated upon pure speculation," Kennedy and Ely Ins. Inc. v. American Employers' Insurance Co., Fla.Ct.App., 179 So.2d 248, 249, see also Nello L. Teer Co. v. Hollywood Golf Estates, Inc., 5 Cir., 1963, 324 F.2d 669, 672, cert. denied, 377 U.S. 909, 84 S.Ct. 1169, 12 L.Ed.2d 178, the conclusion that no damages should be allowed is supportable.

The upshot is that Travelers' recovery stands.

---

6. "*Affirmative Defenses.* In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." F.R.Civ.P. 8(c).

7. Of all records this one proves the wisdom of, indeed the necessity for, F.R. Civ.P. 52(a). The pleadings, trial memoranda, etc. are over a foot thick. Testimony on the trial, independent of many depositions, is nearly 800 pages long. Exhibits fill to bursting a 15-inch grocery carton.

## 2. Security's Claim for Attorney Fees

■ The Court awarded full exoneration to Security against its principal, Peacock, and the contractual indemnitors. But as to attorney fees payable under the indemnity agreement the Court allowed but $4500.00 after finding that as between Security and its counsel their billed fees and expenses of $8,223.06 were reasonable.

Perhaps ineptly phrased, we think the Judge meant by this to say that in terms of legal services rendered to Security only those up to $4500.00 were fairly chargeable to the principal.

### 3. Travelers' Claim to Interest and Attorney Fees

Even though one rests on a Florida statute, the other on general Florida principles, the claims for both have things in common. Underlying each is this thesis. Although subcontractor defaulted and it took a long, hard-fought trial (see note 7, *supra*) to reach a figure, the Court ultimately determined that $63,449.80 was due less set-offs of $28,164.73, leaving a net balance of $35,285.07

due. Again, the thesis runs, although it took a judgment rendered in December 1968 to strike the balance, the Court's determination that the contract was completed in April 1966 meant that Peacock had theoretically withheld payment of the net balance due from that time so that Travelers was entitled to attorney fees expended to recover the amount due and interest for the sum withheld.

The Trial Court rejected both as do we.

### A. Attorney Fees

■ The claim for attorney fees rests on Florida statutes,[8] which provide that as to suits brought by "owners, subcontractors, laborers and materialmen" against a surety, insurer, attorney fees shall be added to any judgment recovered.[9] Travelers claims this right by way of subrogation to the right of a subcontractor.

Although we just held that Travelers is subrogated, it is not to be forgotten that subrogation is a child of equity, whose favors are not to be granted to work injustice.[10]

---

8. "Section 627.0127 (attorney fee) shall also apply as to suits brought by owners, subcontractors, laborers and material men against a surety insurer under payment or performance bonds written by the insurer under the laws of Florida to indemnify such owners, subcontractors, laborers and material men against pecuniary loss by breach of a building or construction contract * * *. Such owners, subcontractors, laborers and material men shall be deemed to be 'insureds' or 'beneficiaries' for the purposes of this section."
Fla.Stat. § 627.0905(2), F.S.A.
Section 627.0127 provides:
   "Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial court, or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court, shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit

in which the recovery is had."
Fla.Stat. § 627.0127(1), F.S.A.

9. The appearance of this argument answers the lingering tactical question of why Travelers belatedly joined Security as a defendant when it already had a valid claim against an obviously solvent principal, Peacock, which it originally felt to be adequate. The answer is that it did not have a chance of getting attorney fees from the principal, but under the statute, by following the "letter of the bond," it might get them from Security. Ironically, if Travelers succeeds, it gets them ultimately from Peacock by virtue of Security's decree for exoneration against Peacock.

10. In Compania Anonima Venezolana De Navegacion v. A. J. Perez Export Co., 5 Cir., 1962, 303 F.2d 692, 697, cert. denied, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 we stated:
   "This takes us to the very fundamentals of subrogation. It is now a mechanism so universally applied in new and unknown circumstances that it is easy to overlook that it originates in equity. Every facet, whether substan-

The suit and resulting attorney costs in this case were the direct result of breach of the subcontract by Travelers' principal. In fact, the principal not only materially breached the contract here, he abandoned it. Due entirely to his action the contractor incurred legitimate charges and losses so substantial[11] that it was justified in not paying until some sort of disinterested adjudication had been made of its liability after set-offs. The subcontractor's abandonment also brought with it uncertainty and controversy as to the set-off due Peacock for delay, rental loss, idle equipment, etc., and the almost unavoidable need for a judicial determination of liabilities.

No Florida case has been cited or discovered which touches this situation. But we decline to believe that Florida would put a construction on an otherwise wholesome and beneficial statute to reward one for the trouble, expense, inconvenience and litigation occasioned by that party's default. And whatever the result would be were Murray's suing, when the door opens only by the "gentle wand of equity," United States v. Maryland Casualty Co., 5 Cir., 1956, 235 F.2d 50, 53, 1956 A.M.C. 1822, 1826, Travelers,

tive or procedural, is controlled by the equitable origin and aim of subrogation. These principles, so well established that to cite cases would be an affectation, find expression in accepted texts, as the following excerpts reflect. 'Legal subrogation is a creature of equity not depending upon contract, but upon the equities of the parties' 50 Am.Jur. Subrogation § 3 at 679. Through it equity seeks ' * * * to prevent the unearned enrichment of one party at the expense of another * * *.' § 4 at 681. It has 'for its purpose the working out of an equitable adjustment and the doing of complete and perfect justice between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it, and preventing the sweeping away of the fund from which in good conscience the creditor ought to be paid.' § 6 at 683–84. It has been 'characterized as an eminently just doctrine, a pure, unmixed equity, one of the benevolences of the law, created, fostered, and enforced in the interest and for the promotion of equity and justice, and to prevent injustice.' § 6 at 685. Applied as it now is, 'it is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.' § 7 at 686. It is 'a consequence which equity attaches to certain conditions. It is not an absolute right, but one which depends upon the equities and attending facts and circumstances of each case.' § 10 at 688. Because its object is 'to do complete and perfect justice between the parties without regard to form or tech-

nicality, the remedy will be applied in all cases where demanded by the dictates of equity, good conscience and public policy. Consequently, relief by way of subrogation will not be granted where it would work injustice, or where innocent persons would suffer, or where the result would be inimical to a sound public policy.' § 11 at 690. As 'subrogation is administered upon equitable principles, it is only where an applicant has an equity to invoke that the courts will interfere. Moreover, the equity of the party seeking subrogation must be strong and his rights clear, and his equity must be superior to that of other claimants.' § 12 at 690–91. And it 'will not be enforced to the prejudice of other rights of equal or higher rank, or to displace an intervening right or title, or to overthrow the equity of another person.' § 13 at 691–92. Subrogation 'is not an absolute right which a party paying the debt of another may enforce at will, but rather, a matter of grace to be granted or withheld as the equities of the case may demand.' § 16 at 693. The whole aim of subrogation 'is the doing of equity and justice and the relief will not be decreed where it will work an injustice, and so it cannot be invoked to the injury of innocent third persons.' § 17 at 693." 303 F.2d 692, 697.

11. The Trial Court allowed Peacock's claim for $28,164.73 on account of Murray's default. This was out of a total unpaid due on the contract of $63,449.80. Not only is the $28,164.73 allowed substantial in comparison with the total amount due but there were other charges disallowed by the Court which Peacock in good faith felt were owing (see, e. g., point 1(B), *supra*).

in the appealing cloak of subrogation, may not obtain compensation from the beneficiary (Peacock) for doing precisely what its bond promised—if Murray's defaults, we, Travelers, will perform. *Compania Anonima, supra,* note 10.

## B. Interest

The same holds true for Travelers' claim that it is entitled to interest from the date it completed the breached contract. Travelers cites Florida cases holding that in actions ex contractu interest is payable from the date the debt comes due, even though there is a genuine dispute as to whether the debt is actually due and litigation was necessary to liquidate it. Sullivan v. McMillan, 1896, 37 Fla. 134, 19 So. 340; Brite v. Orange Belt Security Co., 1938, 133 Fla. 266, 182 So. 892; English & American Insurance Co. v. Swain Groves, Inc., Fla.App., 1969, 218 So.2d 453; Vacation Prizes, Inc. v. City National Bank, Fla.App., 1969, 227 So.2d 352; cf. Kuharske v. Lake County Citrus Sales, Fla., 1962, 61 So.2d 495.

Of course any such result in this case is to put the imprimatur of law on a fiction so fictional that it is absurd—Peacock in April 1966 should have paid $35,285.07 to Murray's (or Travelers) and its continued withholding was a breach of its promise to pay.

Whatever Florida might hold were it strictly between Peacock and Murray's, equity—whose origin was to ameliorate the injustices of the law's inexorability—need not suffer this result when subrogation alone gives standing to the claimant. Such a result may be acceptable to a legalitarian but as Chancellors—whether land-based, afloat or amphibious, see Merrill-Stevens Dry Dock Co. v. M/V "Laissez Faire", 5 Cir., 1970, 421 F. 2d 430, Florida jurisprudence does not drive us to any such decision. It was the breach of Travelers' principal that caused the uncertainty of liability, its dollar amount, and the resulting delay in payment.

Denial of interest was therefore proper.

Affirmed.