467 So.2d 414 (1985)
DADE COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
AMERICAN RE-INSURANCE COMPANY, a Delaware Corporation Doing Business in the State of Florida, Appellee.
No. 84-1511.
District Court of Appeal of Florida, Third District.
April 9, 1985.
*415 Robert A. Ginsburg, Co. Atty., and John E. Finney and Gary Oldehoff, Asst. Co. Attys., for appellant.
Fowler, White, Burnett, Hurley, Banick & Strickroot and Michael A. Mullen, Miami, for appellee.
Before HENDRY, NESBITT and FERGUSON, JJ.
NESBITT, Judge.
Dade County (Dade) appeals a final summary judgment entered for American Re-Insurance Company (American) on an insurance contract dispute. We reverse in part.
The facts in this case are undisputed. By an indemnity insurance contract, American indemnified Dade for losses in excess of $100,000 at a standard premium rate of $1.50 per $100 of transit revenue.[1] The contract provided for annual accountings and adjustments of premiums. These adjusted *416 or retrospective premiums were to be computed by dividing the "incurred losses" by the "loss adjustment factor."[2] These premiums were subject to a "minimum retrospective premium" in an amount of fifty per cent of the standard premium or, in other words, $0.75 per $100 of transit revenue, and a "maximum retrospective premium" in an amount of 100 per cent of the standard premium. The term of the contract was three years, commencing on February 26, 1973 and terminating on February 26, 1976.
The computation of the retrospective premiums was to be done annually with the "incurred losses," as used in the equation and defined in the policy, being "valued as of a date six months after the expiration of [the applicable] period." American was to compute the retrospective premium "as soon as practicable after [the] valuation date." Following the expiration of the three-year term of the insurance contract, retrospective premiums were to be calculated as follows:
A computation of the retrospective premium, based upon the standard premium and the incurred losses for the three year period, such losses to be valued as of a date six months after the expiration of such period, shall be made by the Company as soon as practicable after such valuation date.
Such computation of the retrospective premium for the three year period shall be final if (1) all claims have been closed or it is apparent that the retrospective premium will exceed the maximum retrospective premium [100 per cent of the standard premium], and (2) within ninety days the Company and the Insured agree that the computation be final.
If such computation is not final, a further computation of retrospective premium based upon incurred losses valued as of a date eighteen months after termination of the contract shall be made by the Company as soon as practicable after such valuation date. Such further computation shall be final unless, within ninety days the Company or the Named Insured requests that a further computation be authorized. Any subsequent computations, to be made only at intervals of twelve months, shall each be subject to a similar procedure.
After each computation, if the premium thus computed exceeds the premium paid, the Named Insured shall pay the difference to the Company, subject to the maximum retrospective premium for the period; if less, the Company shall return the difference to the Named Insured, subject to the minimum retrospective premium for the period.
Six months after each of the three annual terms, American computed the retrospective premiums. These calculations were made on September 6, 1974, September 2, 1975 and October 19, 1976, respectively. Each calculation resulted in a rebate of the retrospective premium to Dade based on the minimum retrospective premium of $0.75 per $100 of transit revenue. The last retrospective premium was paid to Dade on November 3, 1976, bringing the total of the retrospective premiums rebated to Dade to $289,372.
Soon thereafter, a judgment in the amount of $617,000 was entered against Dade on a claim covered by the policy. American immediately recalculated the retrospective premium and determined that the maximum premium (100 per cent of the standard premium of $1.50 per $100 of transit revenue) applied. Accordingly, on December 8, 1976, American demanded of Dade the repayment of the rebated retrospective premiums of $289,372.
Over the next several years, while the underlying judgment of $617,000 against Dade was on appeal, American continued its demand for the repayment of the $289,372 *417 premium. The $617,000 judgment was ultimately affirmed on appeal with interest and costs bringing the total to $806,047.53 and the supreme court denied review in June 1981. The judgment was then paid in full by Dade. At this point, Dade conceded that it owed American the $289,372 retrospective premium. The total amount American owed Dade pursuant to the indemnity insurance contract, however, was $675,407.74. Accordingly, on June 16, 1981, Dade requested American to issue its check for $386,035.74, which sum was the total amount due under the contract minus the retrospective premium Dade owed to American.
On August 3, 1981, American tendered to Dade a payment of $308,785.31 as full satisfaction of its obligation. This lesser amount was based upon an interest charge of $77,250.43 on the past due retrospective premium. Dade rejected this offer, returned the check and demanded American pay $386,035.74. When American refused to comply, Dade instituted this action against American for $675,407.74, the entire amount due under the contract, and interest thereon. American counterclaimed for the $289,372 retrospective premium and interest thereon.
On cross-motions for summary judgment, the trial court initially entered an order which on its face granted Dade's motion and denied American's motion. The order, however, awarded Dade $386,035.74 plus interest from July 16, 1981.[3] Thus, the court in effect granted summary judgment on both parties' substantive claims, but denied American's claim for interest.
On rehearing, the trial court changed its position and determined that American was entitled to prejudgment interest on the $289,372 retrospective premium from December 8, 1976 through June 16, 1981. The court determined that the retrospective premium was due when demanded by American on December 8, 1976 and, therefore, interest was due from that date. The court further found that Dade's offer of compromise for $386,035.74 on June 16, 1981 constituted a tender of debt which stopped the running of interest on the past-due retrospective premium. The court also found that American's offer of $308,785.31 on August 3, 1981 constituted a full legal tender of any obligation it owed to Dade. Following these findings, the court then determined that Dade was entitled to $288,734.41 under the terms of the insurance contract. This sum was reached by taking the entire amount due under the contract ($675,407.74) and subtracting both the retrospective premium due to American ($289,372) and the interest calculated thereon from December 8, 1976 through June 16, 1981 (the court determined the interest to be $97,301.33). Despite this determination, the court then entered a judgment for American in the amount of $386,673.33 (the amount of the retrospective premium plus the determined interest) and "denied" Dade's motion for summary judgment. This appeal followed.
Without first reaching the semantic problems with the order, which on its face would require Dade to pay American $386,673.33 and collect nothing under the insurance contract, we find it appropriate to set out what is not in dispute. First, it is clear that American owes Dade a principal amount of $675,407.74 under the indemnity insurance contract. Second, it is also clear that Dade owes American a principal amount of $289,372 pursuant to the retrospective premium provisions in the contract. It follows that Dade was entitled to summary judgment on its claim and American was entitled to summary judgment on its counterclaim. The issues on appeal deal solely with the amount of prejudgment interest to which each party is entitled, if any.
Dade's initial contention is that it is not liable for any amount of interest because of the doctrine of sovereign immunity. The trial court specifically rejected this argument and ruled that sovereign immunity was not a bar to American's counterclaim *418 or the prejudgment interest claimed therein. We find the ruling of the trial court was correct.
It is undisputed that Dade was authorized by law to enter into the indemnity insurance contract here involved. Under basic hornbook law, in order to be valid, a contract must be mutually enforceable. In accord with this principle, the supreme court has recently held that sovereign immunity is not a valid defense to a breach of contract action brought against the state where the state had legal authority to enter the contract. Pan-Am Tobacco Corp. v. Department of Corrections, 9 FLW 73 (Fla. March 1, 1984). Accordingly, the defense of sovereign immunity will not protect Dade from American's counterclaim for Dade's breach of the insurance contract.
Dade concedes that sovereign immunity is not a bar to American's claim for the $289,372 retrospective premium, but argues that since no provision for interest is included in the insurance contract, American is barred by sovereign immunity from collecting interest on this past-due amount. Dade relies upon the limiting language in Pan-Am indicating that the court's holding there "is applicable only to suits on express, written contracts into which the state agency has statutory authority to enter." ___ So.2d at ___. We find that Dade is reading more into this language than the supreme court intended.
Asjust indicated, it is undisputed that Dade had legal authority to enter into the contract. Further, it cannot be seriously contended that American's counterclaim is not based upon an express, written contract. The fact that the contract has no express provision concerning interest is of no consequence since such a provision will be implied by law. § 687.01, Fla. Stat. (1971).[4] The principle is established in Florida that where the state (or any of its subdivisions) can sue or be sued, the state (or subdivision) is impliedly liable for any interest on a claim against it. See Florida Livestock Board v. Gladden, 86 So.2d 812 (Fla. 1956); Treadway v. Terrell, 117 Fla. 838, 158 So. 512 (1935); Brooks v. School Board of Brevard County, 419 So.2d 659 (Fla. 5th DCA 1982); Broward County v. Sattler, 400 So.2d 1031 (Fla. 4th DCA 1981). This is true even though the payment of interest by the state is not expressly provided for by statute or in the contract. Treadway; Sattler. Dade does not dispute that it can be sued on the contract. Where, as here, allowance of prejudgment interest would be legal and just as between private parties, and it is necessary for complete compensation and the administration of justice, the state, or in this case, Dade, is liable for interest on a claim arising out of its breach of contract. See Treadway; Sattler. Accordingly, the asserted defense of sovereign immunity does not bar an award of prejudgment interest against Dade in this case.
In a fall-back argument, Dade contends that the retrospective premium it now admits it owes to American was not a liquidated sum and, therefore, prejudgment interest would be improper. See Parker's Mechanical Contractor's, Inc. v. Eastpoint Water & Sewer District, 367 So.2d 665 (Fla. 1st DCA), cert. denied, 378 So.2d 347 (Fla. 1979); Bryan & Sons Corp. v. Klefstad, 265 So.2d 382 (Fla. 4th DCA 1972). See generally 17 Fla.Jur.2d Damages § 83 (1980) and cases cited. Although the "general rule" has been that prejudgment interest is appropriate only where damages are liquidated, in Florida the distinction between liquidated and unliquidated damages has been substantially blurred. See Sullivan v. McMillan, 37 Fla. 134, 19 So. 340 (1896); Bergen Brunswig Corp. v. State Department of Health & Rehabilitative Services, 415 So.2d 765 (Fla. 1st DCA 1982), review denied, 426 So.2d 25 (Fla. 1983); Town of Longboat Key v. Carl E. Widell & Son, 362 So.2d 719 *419 (Fla. 2d DCA 1978). The present test in Florida is that a claim is unliquidated when the amount of damages cannot be computed except on conflicting evidence, inferences and interpretations. Town of Longboat Key. See, e.g., Parker's Mechanical Contractor's; Bryan & Sons. Damages or claims are considered liquidated for purposes of prejudgment interest where the amounts of the damages or claims can be computed by simple calculation or where a verdict has the effect of fixing damages or claims as of a prior date. Sullivan; Bergen Brunswig.
In the present case, American initially demanded a sum of $289,372. This amount was arrived at pursuant to a simple calculation under the equation for determining the retrospective premium set out in the contract. This is the exact amount alleged by American in its counterclaim. Further, Dade does not dispute the correctness of this figure and, in fact, concedes that it owes American this exact amount under the contract. Accordingly, the trial court correctly ruled that American's counterclaim was liquidated for purposes of prejudgment interest.[5]See Town of Longboat Key.
Our next inquiry concerns when the retrospective premium was due and, thus, when the interest began running thereon, as well as whether Dade's offer of compromise on June 16, 1981 terminated the running of interest on the claim. The trial court determined that the retrospective premium was due on December 8, 1976 when American made its first demand. The trial court further determined that Dade's request for reimbursement of $386,035.74 (the amount due under the insurance contract minus the retrospective premium) on June 16, 1981 constituted a tender of debt which stopped the running of interest on American's counterclaim. We disagree with both of these determinations.
In actions ex contractu it is proper to allow interest at the legal rate from the date the debt was due. Sullivan, Huntley v. Baya, 136 So.2d 248 (Fla. 3d DCA), cert. denied, 143 So.2d 492 (Fla. 1962). See generally 17 Fla.Jur.2d Damages § 84 (1980) and cases cited. To determine what date Dade's debt to American became due, we must resort to the indemnity insurance contract. The relevant provisions are set out in the beginning of this opinion.
The contract provides that upon the expiration of the contract, on February 26, 1976,
[a] computation of the retrospective premium, based upon the standard premium and incurred losses for the three year period, such losses to be valued as of a date six months after the expiration of such period, shall be made by [American] as soon as practicable after such valuation date.
The "incurred losses" were valued as of a date six months after the expiration of the contract and on October 19, 1976, American computed the retrospective premium. The premium thus computed was less than the premium paid by Dade. Pursuant to the contract, therefore, American was required to "return the difference to [Dade], subject to the minimum retrospective premium for the period." In accordance with this contractual requirement American paid Dade a retrospective premium on November 3, 1976.
The payment of this retrospective premium was not final, however, since there was at least one outstanding claim against Dade covered by the policy and the computation of the retrospective premium on October 19, 1976 did not exceed the maximum retrospective premium. In addition, it is clear that the parties did not agree that the computation would be final. Therefore, according to the contract,
a further computation of the retrospective premium[,] based upon incurred losses *420 valued as of a date eighteen months after termination of the contract[,] shall be made by [American] as soon as practicable after such valuation date. [emphasis added]
Pursuant to the contract, therefore, the earliest date American could make a further computation of the retrospective premium was August 26, 1977, eighteen months after the termination of the contract and the first date American could put a value on the "incurred losses" so as to compute the premium.
Despite the fact that the initial value of the "incurred losses" remained unchanged beyond August 26, 1977, American's demand for payment on December 8, 1976 was untimely. This determination is mandated because the retrospective premium could not be calculated without placing a value on the "incurred losses" and these losses were not to be valued until "a date eighteen months after termination of the contract." The first timely demand made by American for the $289,372 retrospective premium occurred on September 29, 1977. Pursuant to the contract, therefore, Dade's debt to American became due on that date and Dade's refusal to pay the retrospective premium constituted a breach of contract.[6] Accordingly, American is entitled to prejudgment interest from September 29, 1977 on $289,372, the amount of the retrospective premium due on that date. See Brite v. Orange Belt Securities Co., 133 Fla. 266, 182 So. 892, 896 (1938). See generally 17 Fla.Jur.2d Damages § 84 (1980).
On June 16, 1981, Dade requested reimbursement from American under the insurance contract for $386,035.74. Since this amount equaled the total amount due to Dade under the contract ($675,407.74) minus the retrospective premium Dade owed American ($289,372), the trial court determined that this request constituted a tender of the debt Dade owed to American, thus, stopping the running of interest on the past-due retrospective premium. We disagree.
It is generally accepted law that the function of a tender is to relieve the debtor from the subsequent accrual of interest. Morton v. Ansin, 129 So.2d 177, 182 (Fla. 3d DCA 1961). See generally 39 Fla.Jur.2d Payment & Tender § 13 (1982). A tender of less than the full amount due, however, is insufficient. Morton, 129 So.2d at 182. See also Stager v. Florida East Coast Railway, 189 So.2d 192, 194 (Fla. 3d DCA 1966). Thus, if the amount of the tender does not include the interest to which a creditor is entitled, the tender is nugatory. Morton, 129 So.2d at 182. See generally 39 Fla.Jur.2d Payment & Tender § 5 (1982).
In the present case, on June 16, 1981, Dade may be deemed to have tendered payment of $289,372, the principal amount of its debt to American. This tender, however, was nugatory since it did not include the interest due on the amount owed to American. Accordingly, Dade's actions on that date did not stop the interest from accruing on the past-due retrospective premium.
We turn now to Dade's claim under the insurance indemnity contract. It is undisputed that American owes Dade $675,407.74 under the contract. This amount became due and owing when Dade paid the underlying judgment and demanded reimbursement from American on June 16, 1981. American tendered payment of $308,785.31 on August 3, 1981. This amount was arrived at by American by taking the total amount due to Dade under the contract ($675,407.74) and subtracting both the past-due retrospective premium ($289,372) and an interest charge thereon ($77,250.43). The trial court determined that this tender amounted to a full legal tender of any obligation American owed to Dade, thus, terminating the accrual of interest on Dade's claim.
If American's tender had equaled or exceeded the amount it owed Dade, prejudgment interest would not have accrued *421 subsequent to the date of the tender. See S.C.M. Associates, Inc. v. Rhodes, 395 So.2d 632, 634 (Fla. 2d DCA 1981); Morton, 129 So.2d at 182. The question becomes, therefore, whether the amount of interest American charged, $77,250.43, was less than or equal to the actual interest that was due on the past-due retrospective premium. Calculating interest at six per cent from September 29, 1977 through August 3, 1981 on the retrospective premium indicates that American was charging Dade nearly $10,000 in interest over and above the actual amount of interest due.[7] Accordingly, American's actions on August 3, 1981 did not amount to a sufficient tender and did not stop the accrual of interest on Dade's claim under the contract.
In conclusion, Dade is entitled to summary judgment on its claim for $675,407.74 under the contract plus interest from June 16, 1981. American is entitled to summary judgment on its counterclaim for the $289,372 retrospective premium plus interest from September 29, 1977. The cause is remanded to the trial court with directions to enter judgment in accordance with this opinion, setting off the amounts due each party and entering a money judgment accordingly.
NOTES
[1] The excess indemnity insurance was for the county's bus system. The premium was based upon the total transit revenue the system took in over the period of coverage.
[2] "Incurred losses" was defined in the policy to mean "the sum of all losses actually paid, all reserves for unpaid losses as established by the Company and all allocated loss adjustment expenses paid or to be paid by the Company." The "loss adjustment factor" was .725. The contract provided that the retrospective premium was to be computed by "dividing the incurred losses by the loss adjustment factor."
[3] It is apparent from our review of the record that the court intended this date to be June 16, 1981, the date Dade demanded reimbursement under the policy from American.
[4] The statute provides that where a contract is silent as to interest, "the rate shall be six per cent per annum." § 687.01, Fla. Stat. (1971). Effective July 1, 1982 the interest rate was increased to twelve per cent per annum. See ch. 82-42, § 1-2, Laws of Fla.
[5] Although the date the trial court determined the debt was due was incorrect, see infra, it is clear that the retrospective premium was due prior to the institution of this lawsuit. Cf. Bergen Brunswing 415 So.2d at 767 ("a claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date").
[6] The contract provides that if the retrospective premium computed "exceeds the premium paid, [Dade] shall pay the difference to [American], subject to the maximum retrospective premium for the period."
[7] The interest which is allowed is simple interest only; interest compounded annually is not allowed. See Dezen v. Slatcoff, 65 So.2d 484 (Fla. 1953); Deno v. Smith, 103 Fla. 282, 140 So. 335 (1931)(on petition for rehearing).