M. H. SULLIVAN AND EMILY S. SULLIVAN, AS EXECUTOR AND EXECUTRIX OF D. F. SULLIVAN, DECEASED, APPELLANTS, VS. A. M. MCMILLAN AND C. L. WIGGINS, CO-PARTNERS AS MCMILLAN & WIGGINS, APPELLEES.

1. The rule that one who has been damaged by a breach of a contract should do all that reasonably lies within his power to protect himself from loss, by seeking another contract of like character, the profits of which should be applied in mitigation of such damages, is correct as applied to some classes of cases, and has especial reference to contracts for personal services, or for the use of some special instrumentality either with or without connection with such personal services.

2. The rule stated in the preceding head-note does not apply to a contract which is simply for the delivery of certain logs at a certain place, which might have been performed by the parties undertaking such delivery with their own teams and personal labor, or by any other means or agency to which they might have seen fit to entrust the performance of the same when there is nothing in the contract to show that the execution of the same required all or any great portion of the time or personal attention of such parties, or any of them.

3. The doctrine that a party who has been injured by the breach of a contract must do all that is reasonably within his power to mitigate the damages caused thereby, does not prevail to the extent that one who is injured by the violation of an agreement not necessarily involving personal services or the use of some special instrumentality must seek and perform other con-

tracts for the benefit of the party who, by breaking faith with him, has caused the injury.

4. The ancient rule is adverse to the assessment of interest upon unliquidated damages. More liberal ideas now prevail, and the distinction is practically obliterated between liquidated and unliquidated demands. Wherever a verdict liquidates a a claim, and fixes it as of a prior date, interests should follow from that date.

5. Whenever a definite time of default or tort-feasance can be as- certained interests should be allowed from that date. As soon as it is the legal duty of the defendant to pay he is liable for interest. As the defendant must have been in default before the action is brought, if the plaintiff recovers, and as his de- fault consisted in withholding money due, it seems that he should be liable for interest at least from the date of the writ.

6. Interest is not the mere incident of a debt attaching only to con- tracts, express or implied, for the payment of money, but its compensation for the use or for the detention of money. When- ever it is ascertained that at a particular time money ought to have been paid, whether in satisfaction of a debt, or as a com- pensation for a breach of duty, or for a failure to keep a con- tract, interest should be allowed thereon.

7. The evidence shows that the plaintiffs could have completed the contract at a certain time, *viz:* two years from the time that they were prevented from completing the same by the defend- ants. The action was brought long before the expiration of said two years. The jury were instructed to allow interest "from whatever date the evidence shows the contract would have been complete." The verdict shows that the interest was cal- culated from the date proven. There was no error prejudicial to defendant in the instruction or in the finding of the jury.

Appeal from the Circuit Court for Escambia county.

The facts in the case are stated in the opinion of the court.

*R. L. Campbell*, for Appellants.

*W. A. Blount*, for Appellees.

LIDDON, J.:

This is the second appeal in this case. On the first appeal all questions of law presented by the case have been settled, except two matters now controverted between the parties.

The nature of the case will fully appear by reference to the reported opinion, and the statements of fact accompanying the same (26 Fla. 543, 8 South. Rep. 450). The suit was brought by appellees, hereafter called the plaintiffs, against appellants, hereafter called the defendants, for the breach of a contract, whereby appellees agreed to deliver to the testator of appellants all the logs of certain specified dimensions and free from certain specified defects, growing upon certain described lands of said testator. The breach alleged to have been made by the defendants after the death of said testator was in refusing to receive the remainder of said logs, after a portion of the same had been delivered. From the evidence it appears that it would have taken appellees two years, or thereabout, from the time the contract was broken by appellants, to have completed the contract on their part by delivery of the other logs embraced within the provisions of the same. After the appellants broke the contract by refusing to receive any more logs under the same, the appellees, with some of the same teams that had been engaged in the work required for the performance of such contract, engaged in other work of delivering logs under other contracts to other parties. The appellants sought to prove what gains and profits were made by the appellees by their own labor and the use of such teams in such other work and contracts during the time that it would have

taken them to perform the contract with the appellants' testator, and for the breach of which the suit was brought. The Circuit Court excluded such evidence. The proof upon the trial did show the value of the use of these teams, and what other teams could have been engaged for, and were taken into consideration in estimating the plaintiffs' profits upon which the verdict was based. The appellants claim that such evidence should have been admitted, that they were entitled to prove the amount of such gains and profits, and that such amount should have been deducted by the jury from the amount found to be due the appellees, under the rule for the measure of damages established by this court (26 Fla. 543, 8 South. Rep. 450). The first of the matters controverted, above alluded to, is whether such gains and profits made by the appellees in subsequent contracts should be deducted from the general amount of damages which, under the measure of damages established as stated, could be recovered by them. The second is, whether any interest should be recovered on the damages caused by the breach of the contract for which the action was brought.

It is urged by appellants that he plaintiffs, when they received notice that the defendants would not further comply with or perform the contract, should have done all that reasonably lay within their power to protect themselves from loss, by seeking other contract of like character, and that the plaintiffs having sought and obtained such a contract immediately after the breach sued upon, the defendants were entitled to have a proportionate amount of the profits applied in mitigation of the damages for which they were liable. Otherwise it is contended that the plaintiffs would

make two profits for the same time and with the same
teams, and that speculation would be substituted for
compensation, which is the basis of the law of dam-
ages for breaches of contract. These propositions are
undoubtedly correct when applied to some class of
cases. They have special reference to contracts for
personal services, or for the use of some special instru-
mentality, either with or without connection with such
personal services. Thus in a contract for teaching in
a school, which was broken by a refusal to receive the
services, it was held to be the plaintiff's duty to make
reasonable exertion to obtain other like employment in
the same vicinity, and thus mitigate the damages.
Gillis vs. Space, 63 Barb. 177; Benziger vs. Miller, 50
Ala. 206. The same rule was laid down for a similar
breach of a contract with an actress. Howard vs.
Daly, 61 N. Y. 362, S. C. 19 A. M. Rep. 285. Where
the plaintiff, owner of a portable saw-mill, agreed to
remove it to the farm of the defendant and to saw a
stated number of logs, to be furnished by the defend-
ant, during certain seasons of the year 1865, and the
defendant after furnishing a portion, broke his con-
tract by refusing to furnish more of such logs, but dur-
ing the time he (plaintiff) would have been engaged in
sawing defendant's logs he was offered other employ-
ment of the same kind, so that his mill need not have
been idle, it was held that the damages caused by the
breach sued upon should have been mitigated. Heav-
ilon vs. Kramer, 31 Ind. 241. The facts in the case of
Frazier vs. Clark, 88 Ky. 260, 10 S. W. Rep. 806, a
saw-mill case, very much resemble those of Heavilon
vs. Kramer, and the same point was likewise deter-
mined. In a case of a breach of a contract to furnish
a cargo for a vessel, it was held to be "the duty of the

master of a chartered vessel, on the failure or refusal of the charterer to furnish the cargo as agreed on, to avail himself of all ordinary means and proper opportunities to obtain another cargo; and if he neglect to perform this duty, the owners can not hold the charterer liable for the increased damages resulting from such neglect." Murrell vs. Whiting & Summer, 32 Ala. 54. A very similar case, and a very similar holding, is Shannon vs. Comstock, 21 Wend. 457, S. C. 34 Am. Dec. 262. In Hodges vs. Fries & Co., 34 Fla. 63, 15 South. Rep. 682, a suit for violation of a contract for rent of a store building, by refusing to put plaintiff in possession of same, it was held to be the duty of the plaintiff to mitigate the damages by accepting another store in the same vicinity, and equally well suited for her purposes, which was tendered to her.

The contract which was broken in the present case was not one for personal services, nor one which the parties contemplated should be performed with any special means or instrumentality. It was simply a contract for the delivery of certain logs at a certain place, and might have been performed by the plaintiffs with their own teams and personal labor, or by any other means or agency to which they might have seen fit to intrust the performance of the same. There is nothing in the contract to show that the execution of the same required all or any great portion of the time or personal attention of both or either of the plaintiffs; or that it was impracticable for plaintiffs to be engaged in other business and the performance of other contracts contemporaneously with the performance of the contract in controversy. We do not think the rule invoked as to mitigation of damages, by subsequent earnings and profits, applies to this case. A distinc-

tion is recognized between a case of the character of that now before us, and those to which we have alluded. 2 Greenleaf on Evidence, sec. 261; Watson vs. Gray's Harbor Brick Co., 3 Wash. 283, 28 Pac. Rep. 527; 1 Sedgwick on Damages, sec. 208; Wolf vs. Studebaker, 65 Pa. St. 459; Crescent Manufacturing Co. vs. Nelson Manufacturing Co., 100 Mo. 325; Nilson vs. Morse, 52 Wis. 240, text 255, 9 N. W. Rep. 1; Cameron vs. White, 74 Wis. 425, 43 N. W. Rep. 155; Field on Damages, sec. 339.

There was no legal obligation upon the plaintiffs in this case to enter upon the performance of other contracts for the benefit of the defendants. The Supreme Court of Wisconsin, in Cameron vs. White, *supra*, where a contention like that of appellants in this case was made, as we think, properly said: "As the plaintiffs could not enhance the damages against the defendant by their neglect to make the best of what they had on their hands, so they are not bound to lessen the damages by making other contracts, and performing them, and giving the benefit of the performance of such contracts to the defendant." A very full exposition of this subject, showing the difference in the rule applicable to contracts for personal service, and those for the doing of a specific act, can be found in Watson vs. Gray's Harbor Brick Co., *supra*. This discussion is too lengthy to insert entire in this opinion. The gist of the whole matter, the conclusion of the court, citing Wolf vs. Studebaker, 55 Pa. St. 459, is thus stated: "The duty to seek employment is dependent upon the original contract being one of employment or hire. It is not applicable to every contract. * * Ordinary contracts of hire, and contracts for the performance of some specified undertaking can not be governed by the

same rule.   That in one case the party can earn no
more than the wages, and if he gets that his loss will
be but nominal; whereas, in the other case, the loss
of the party is the loss of the benefit of the contract.
The damages may be said to be fixed by the law of the
contract the moment it is broken, and can not be al-
tered by collateral circumstances independent of and
totally disconnected from it, and from the party occa-
sioning it.   To plead the doctrine of avoidable conse-
quences to such case,   *   *   'would necessarily in-
volve proof of everything, great and small, no matter
how various the items done by the plaintiff during the
period of the contract might be, and how much he
made in the mean time.'   *   *   *   If the rule was to
be observed that the damages proven must be direct
and approximate, the same rule must be invoked in
the reduction of damages."   In Crescent Manufactur-
ing Co. vs. Nelson Manufacturing Co., *supra*, where
an attempt was made to offer evidence similar to that
excluded in the present case, it was said:   "Where a
servant is wrongfully discharged during his term and
lays his damages at the contract wages for the balance
of the term, it is generally held that evidence may be
introduced in mitigation of damages of what he might
have earned in the interim by using reasonable efforts
to procure other employment.   So in general where a
party has been injured, or damaged, by a breach of a
contract, he should do whatever he can to lessen the
injury.   Many cases asserting these principles of law
are cited by the defendant, but they have no applica-
tion to the case in hand.   The plaintiff owned its fac-
tory and the machinery, and the contract constituted
no such relation as that of master and servant.   It had
the right to make as few or as many other contracts as

it saw fit whilst executing the contract with defend-ant, and it is entitled to the profits which it might have made on this particular contract. The evidence offered in mitigation of damages was properly ex-cluded.''

From what has been said by us, and quoted with ap-proval from the decisions of other courts, it follows that we are of the opinion that the Circuit Court did not err in excluding the testimony offered, and that the doctrine that one who has been injured by the breach of a contract must do all that is reasonably within his power to mitigate the damages caused there-by, does not prevail to the extent that one who is in-jured by a violation of an agreement to do a specific act not necessarily involving personal services, must seek and perform other contracts for the benefit of one who, by breaking faith with him, has caused the in-jury.

The second matter, as already stated, is whether any interest is recoverable upon the amount of damages found by the jury against the defendants. The court instructed the jury that if they found a verdict for the plaintiffs, they should assess the damages, with eight per cent. interest, from whatever date the evidence showed the contract would have been completed. The jury in its verdict stated separately the amount of the damages assessed, and the interest thereon, and judg-was entered for the aggregate amount. These pro-ceedings are claimed to be erroneous for the reasons alleged, (1) that no interest can be allowed in a recov-ery of unliquidated damages, and (2) that the evidence does not show any date from which the jury might cal-culate the interest. It can not be doubted that the an-cient rule is adverse to the assessment of interest upon

unliquidated demands. More liberal ideas as to the allowance of interest prevails in modern, especially in American authorities; and in the allowance of interest the distinction is practically obliterated between liquidated and unliquidated demands. A standard author upon the subject says: "The determination of the question whether interest can or can not be allowed, is by no means free from difficulty. The most general classification of causes of action with reference to interest is into liquidated and unliquidated demands. And it was formerly attempted to lay down the rule that interest could be recovered only on liquidated demands. But it will be perceived that not only is the distinction itself not by any means easy to keep in view, but besides this there is no reason in the nature of things why the fact of a demand being unliquidated should debar the plaintiff from receiving or exempt the defendant from paying interest. And finally, we do not find as a matter of fact that the line between cases in which interest is allowed, and cases in which it is refused, corresponds with the line between liquidated and unliquidated demands. * * * * The objection to this classification lies not only in its difficulty of application, which might perhaps be surmounted; but in the fact of its unfairness. There is no reason why a person injured should have a smaller measure of recovery in one case than the other. * * On general principles, once admit that interest is the natural fruit of money, it would seem that wherever a verdict liquidates a claim and fixes it as of a prior date, interest should follow from that date. * * There are two tests which are constantly applied by the courts, having been found by them more useful than the attempted division into liquidated and unliquidated de-

mands. Of these the first is whether the demand is of
such a nature that its exact pecuniary amount was
either *ascertained*, or *ascertainable* by simple compu-
tation, or by reference to generally recognized stan-
dards such as market price; second, whether the time
from which interest, if allowed, must run—that is, a
time of definite default or tort-feasance—can be ascer-
tained." 1 Sedgwick on Damages (8th ed.), secs. 299,
300. "The subject is without doubt a difficult one,
and the decisions, as have been seen, are not harmoni-
ous. But by keeping in mind the fundamental prin-
ciple much of the difficulty may be avoided. As soon
as it is the legal duty of the defendant to pay, he is
liable for interest. As the defendant must have been
in default before the action is brought, if the plaintiff
recovers, and as his default consisted in withholding
money due, he should, it seems, get interest at least
from the date of the writ. There seems to be good rea-
son for going further, and holding him to be in default
from a demand by the plaintiff for an accounting (made
after a reasonable time) and a refusal to account. From
that time the defendant can not claim any right to
withhold whatever balance was in fact due, and would
have been found due if he had acceded to the plain-
tiff's demand; before that, the plaintiff can not claim
any right to payment. Where interest is refused in
actions of contract on the ground that the claim is un-
liquidated, it is in fact usually allowed from the date
of the writ." Ibid, sec. 315. We think the above
quotations state the true rule. Another author while
affirming the proposition that interest is not allowed
on unliquidated demands, makes an exception in favor
of "demands based upon market values, susceptible of
easy proof, though unliquidated until the particular

subject of the demand has been made definite and certain by agreement or proof." 1 Sutherland on Damages, p. 610.

An examination of the authorities show that the principles quoted above are sustained by various decisions. In State vs. Lott, 69 Ala. 147, it is said: "Interest in this State has long been regarded, not as the mere incident of a debt, attaching only to contracts, express or implied, for the payment of money, but as compensation for the use or for the detention of money. Whenever it is ascertained that at a particular time money ought to have been paid, whether in satisfaction of a debt, or as compensation for a breach of duty, or for a failure to keep a contract, interest attaches as an incident."

Without lengthening this opinion with further quotations, we simply cite, as having a direct bearing upon the subject, the following cases: Van Rensselaer vs. Jewett, 2 Comstock, 135, S. C. 51, Am. Dec. 275; Schmidt vs. Louisville & Nashville R. R. Co., 95 Ky. 289, 26 S. W. Rep. 547; Brackett vs. Edgerton, 14 Minn. 174; S. C. 100 Am. Dec. 211; Boyd vs. Gilchrist, 15 Ala. 849; Whitworth vs. Hart, 22 Ala. 343; Adams vs. Fort Plain Bank, 36 N. Y. 255; Selleck vs. French, 1 Conn. 32, S. C. 6 Am. Dec. 185. This court has allowed interest on an unliquidated claim of damages in Jacksonville, Tampa & Key West Ry. Co. vs. Peninsular Land, Transp. & Manuf'g Co., 27 Fla. 1, text 140 *et seq.*, 9 South. Rep. 661, and expressed its disapproval of Ancrum vs. Slone, 2 Spears (So. Ca.), 594, in which it was held that interest could not be allowed on unliquidated damages.

Without setting forth even a brief summary of the evidence in the case, we think it sufficient to say that it was so exact and definite as to the amount of damage sustained by the plaintiffs, and the elements of the same, that it only required a simple computation by the jury to fix the amount. We think the case falls within the rule stated, that the damages could be readily liquidated and ascertained by the jury by simple computation, and that the plaintiffs were entitled to interest thereon.

We do not think the objection well taken, that the evidence shows no date from which the jury could calculate the interest. The evidence shows sufficiently a date within which the plaintiffs could have completed their contract, viz: Two years from the time the defendants made a breach of it. This time was long after the action was brought. The amount of interest allowed shows that it was calculated from such date. The court told the jury to allow the interest "from whatever date the evidence shows the contract would have been completed," and we think the proof sufficiently definite as to such a date. There was no reversible error in the instruction, or the finding of the jury. By this holding we do not intend to determine whether the interest could have been calculated only from the date sufficient for the completion of the contract, or whether it should have been estimated from the breach of the same, or from the filing of the writ in the suit. We only determine that there was no prejudicial error to the defendants in the record. If the rule varied at all from the true rule for calculation of interest, such variance was in defendants' favor and lessened the amount of the recovery against them.

Let the judgment of the Circuit Court be affirmed.