380 So.2d 461 (1980)
Eugene E. MORI D/B/a Mori Enterprises, Appellant,
v.
MATSUSHITA ELECTRIC CORPORATION OF AMERICA, a Foreign Corporation D/B/a Panasonic, Appellee.
No. 78-2091.
District Court of Appeal of Florida, Third District.
January 29, 1980.
Rehearing Denied March 10, 1980.
*462 Papy, DuVal, Poole & Usich and Harvey DuVal, Coral Gables, for appellant.
August, Gassen, Pohlig & Milstein and Joseph Gassen, Miami, for appellee.
Before HENDRY, HUBBART and NESBITT, JJ.
NESBITT, Judge.
This is an appeal and a cross-appeal from a final judgment entered in an action for breach of contract.
For convenient reference, the appellant will be referred to as "Mori" and cross-appellant, Matsushita Electric Corporation of *463 America, a foreign corporation, d/b/a Panasonic as "Panasonic."
The record reveals that in October of 1972, Mori and Panasonic entered into a written agreement whereby Mori agreed to build, according to specifications, 40,000 square feet of warehouse space and lease the same to Panasonic for a term of ten years. The agreement did not provide for a delivery date. Thereafter, on March 9, 1973, the parties entered into an addendum to the original agreement providing that construction would commence "forthwith" and Mori was to deliver to Panasonic the warehouse space not later than July 23, 1973.[1] Mori developed more expansive plans to construct a 100,000 square foot warehouse complex which embraced that space to be built and leased to Panasonic. Panasonic had an option to lease an additional 20,000 square feet effective two years from the delivery date. As of April 10, 1973, Mori had neither obtained financing nor a building permit. Panasonic, having become concerned over the completion date, forwarded a letter to Mori dated April 10, 1973 stating that unless visible construction was commenced by April 19, 1973 it would repudiate the agreement. Mori immediately began the placement and compaction of fill upon the proposed construction site.
On April 24, 1973, Panasonic demanded that Mori enter into a further written agreement requiring adherence to strict construction schedules. Mori refused and Panasonic immediately repudiated the agreement as modified. In May of 1973, Panasonic entered into an agreement for construction of similar facilities with another party in the same industrial complex and ultimately obtained occupancy thereof during late November 1973.
On July 17, 1973, Mori commenced an action for breach of contract seeking, by amended complaint, damages against Panasonic. In its answer, Panasonic denied the material allegations of the amended complaint and, by affirmative defense, alleged that it was Mori who had breached the contract. Panasonic counter-claimed for the return of its security deposit as well as costs and damages. The issues of liability and damages were bifurcated.
In the chronology, it is pertinent to first consider the cross-appellant's points on appeal.

I
In a non-jury trial, the court resolved the issue of liability in favor of Mori holding that Panasonic had breached the contract by rescinding same on April 24, 1973. Panasonic claims it should not have been held liable for terminating the agreement. It contends that it was reasonable to conclude that Mori had committed a prospective breach of the contract.
A prospective breach of the contract occurs when there is absolute repudiation by one of the parties prior to the time when his performance is due under the terms of the contract. Such a repudiation may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute.[2]
The trial court did not find a repudiation by Mori nor did it find that Mori had indicated an intent to abandon the contract by placing himself in a position which would render it impossible for him to comply with the contract. See Harper v. Bronson, 104 Fla. 75, 139 So. 203 (Fla. 1932); Hall v. Northern & Southern Co., 55 Fla. 235, 46 So. 178 (Fla. 1908). The findings of the trial court arrive here clothed with the presumption of correctness and where the evidence, although conflicting, is not found to be clearly erroneous, the trial court's findings will not be disturbed. Mart v. Leibman, 281 So.2d 367 (Fla. 3d DCA 1973); CIC Leasing Corp. v. Dade Linen and Furniture Co., 279 So.2d 73 (Fla. 3d DCA 1973); Harbor *464 Yacht Repair, Inc. v. Sanger, 279 So.2d 64 (Fla. 3d DCA 1973).
The issue of damages was subsequently tried, also non-jury, and that proceeding culminated in a final judgment entered by the trial court on September 1, 1978. That judgment, provided that Mori was to recover from Panasonic the sum of $45,745.96 which represented Mori's loss of profits. That figure was arrived at by taking the actual profit which Mori would have received had both parties been required to complete the contract, that is, total rental and other monies Mori was to receive for the ten-year term of the contract minus the expenses which Mori would have incurred in carrying out the terms of the ten-year lease and completing the warehouse by July 23 as prescribed by the agreement as amended on March 9, 1973. As part of the expenses which Mori would incur under the contract, the trial court included the sum of $222,030.70 which it found to be the additional costs Mori would have had to expend to complete the entire 100,000 square foot structure by the July 23, 1973 completion date. Also included in the expenses Mori would have incurred were: (1) management and maintenance costs; (2) insurance; and (3) a financing fee.
In the trial court, as on appeal, the parties are in total disagreement as to the proper measure of damages to be applied. Panasonic, in the lower court and in this cross-appeal, takes the position that the transaction should have been treated as though it were a conveyance between the parties and consequently damages based on "benefit of the bargain," applicable between landlord and tenant, should have been applied. Mori urges that the measure to be applied was loss of profits. Loss of profits is a proper measure for damages resulting from the anticipatory breach of a contract. "This is especially true where the breach consists in repudiating it or otherwise preventing its performance, without the fault of the other party who is willing to perform it." 9A Fla.Jur., Damages, § 83.[3]
The trial court agreed with Mori's approach and awarded damages based on loss of profits arising from the repudiation by Panasonic and invoked and applied the rule long adhered to in Florida as enunciated in Sullivan v. McMillan, 26 Fla. 543, 8 So. 450 (1890), wherein the Supreme Court held:
Where the time for the performance of an executory contract has arrived, or where the contract is being performed, and one of the parties notifies the other unequivocally that he will not perform or further perform his part, or will not accept performance by the other, the latter may treat the contract as put to an end or entirely broken by the former, and, if ready and willing to perform his part, sue him at once for an entire breach of contract, and can recover as damages the same profits that he would have earned had he entirely performed the contract.
In other words, the trial court applied the rule of compensatory damages which were foreseeable by the parties under the doctrine of anticipatory breach. In so ruling, the trial court was correct. In all the cases examined awarding damages in landlord-tenant relationships, the building was either completed or in existence at the time of the breach. No authority has been cited us and our independent research reveals none to support Panasonic's position in this cross-appeal. In point of fact, the warehouse in question had not been completed at the time of the trial on damages in July of 1978.
The other points raised by Panasonic/cross-appellant have been thoroughly considered and are found to be without merit.

II
In the main appeal, Mori contends that the trial court should not have held him to strict performance of the contract in assessing his damages. Mori argues he should not have been held to the July 23, 1973 *465 completion date because he had agreed to reimburse Panasonic for public warehousing of its merchandise in the event the building was not completed on time.[4] Mori does not contend that time was not a material element but rather that this clause would have exculpated him from the strict requirements of meeting the completion date.
This contention is dispelled by the case of Sullivan v. McMillan, supra, which Mori relies upon in discussing damages, wherein the court stated: "It cannot be that the plaintiffs are to be better off than they would have been if they had performed the contract." As applied to the case sub judice, the trial court simply held that Mori should not be placed in a better position because Panasonic breached the contract than he would have been had they performed. The trial court did, most emphatically, hold Mori to the July 23 completion date. Having found that Mori could have completed the warehouse by July 23, the court deducted from his damages the sum of $222,030.70 for the cost of the extraordinary outlay that it would have taken to complete the building according to schedule.
Panasonic contends that this setoff of 100% of the cost overrun was proper in that Mori would not have been able to perform by the July 23, 1973 delivery date because he could not have provided a certificate of occupancy from governmental authorities unless the entire structure was completed. Such an argument presupposes full performance by the aggrieved promissor and in this case actual completion of the warehouse. When the doctrine of anticipatory breach is properly invoked, the promissor need not actually perform under the agreement but need only be ready and willing to perform. Slaughter v. Barnett, 114 Fla. 352, 154 So. 134 (1934); Sullivan v. McMillan, supra. Moreover, as has already been discussed, the trial court found that it was possible for Mori to have performed by the July 23, 1973 deadline. Additionally, it is evident that the cost overrun would have been incurred to build the entire 100,000 square feet of warehouse, as conceived by Mori, rather than only 40,000 square feet for which Panasonic had bargained. Only that part of the overrun which would be allocable to that portion of the warehouse space bargained for could properly be charged against the monies to be received for the rental of that same space. The trial court therefore was in error to offset Mori's anticipated profits under the contract by the full $222,030.70.
Mori also asserts that there was insufficient evidence as to the actual amount of insurance and financing fee to justify a setoff of these items as expenses against his loss of profits. Expenses necessarily must be considered in ascertaining anticipated profits. We agree with the well established principle that an award of loss of profits must be supported by evidence and cannot be based upon mere speculation or conjecture. However, it is also well established "that where damages cannot be precisely and mathematically determined, the trial judge is vested with reasonable discretion in making awards of damages." John Hancock Mutual Life Insurance Company v. Mark-A, Inc., 324 So.2d 674 (Fla. 2d DCA 1975). We find, in review of the record before the court, that there was ample evidence to ascertain the amount of these expenses. The degree of certainty required is not one of precise measure but rather one which may be established by sufficient and competent testimony. John Hancock Mutual Life Insurance Company v. Mark-A, Inc., supra.
We are in accord with the findings of the trial court as to liability and the rule of damages employed except as to the 100% cost overrun which was deducted from Mori's damages. The trial court erred in setting off more than 40% of the cost overrun against Mori's money judgment. Accordingly, the judgment appealed from is remanded with directions to render an amended judgment setting off only that portion of the overrun allocable to the contract, i.e., 40% of the $222,030.70 overrun instead of the entire amount.
Affirmed in part, reversed in part.
NOTES
[1] The addendum also provided that, in the event Mori failed to complete and deliver by the date certain, it would reimburse Panasonic for warehouse charges in connection with storage of merchandise in public warehouses and other extraordinary expenses.
[2] 11 Fla.Jur.2d, Contracts, §§ 172, 174 and 226 and cases cited therein.
[3] As to loss of profits as proper measure of damages, see cases under footnote 77 of § 83.
[4] See footnote 1, supra.