383 So.2d 979 (1980)
Edward L. NEZELEK, INC., Appellant,
v.
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Appellee.
No. 78-2561.
District Court of Appeal of Florida, Fourth District.
May 28, 1980.
*980 Wayne A. Cypen of Cypen & Nevins, Miami Beach, for appellant.
Eugene L. Heinrich and G. Ware Cornell, Jr. of McCune, Hiaasen, Crum, Ferris & Gardner, P.A., Fort Lauderdale, for appellee.
LETTS, Chief Judge.
A contractor here appeals a directed verdict by a trial court because it failed to adequately establish its lost profits under a construction contract which its customer allegedly breached. We reverse.
The contractor found out it was successful on a bid of $989,760. for a building when Southern Bell wrote the following letter:
 November 20, 1974
 E.L. Nezelek, Inc.
 P.O. Box 23490
 Fort Lauderdale, Florida
Gentlemen:
We are pleased to inform you that your bid for the new Boca Raton  Sandalfoot ESS building is low and has been accepted. Alternate Number One is also accepted.
Three sets of signed and sealed plans and specifications and septic tank approval are being forwarded to you by Baker and Associates for your use in obtaining the required building permits.
Please do not proceed with any work at the site until a contract has been properly executed and you have received official notice to proceed from this office.
 Yours truly,
The contractor responded to this letter immediately by forwarding a standard form building contract duly signed by it. This contract was neither signed nor returned by Southern Bell.
Thereafter on January Third, some 45 days after the letter accepting the bid, the contractor wrote a letter claiming that the concluding paragraph of the letter set forth above constituted an illegal stop order and that Southern Bell had "wrongfully failed to give ... notice to proceed."
We commence by disagreeing with the trial judge who ruled that the loss of prospective profits testimony did not meet the reasonable certainty test enunciated in Adams v. Dreyfus, 352 So.2d 76 (Fla. 4th DCA 1977).[1] At trial, the contractor introduced its bid sheet containing forty-one line items showing a cost including variable overhead of $914,180. From this, a profit of $75,580 was calculated (7 1/2%). The chief estimator for the contractor testified as to *981 how he had prepared the bid sheet and how he had calculated the variable overhead costs for the job, without objection as to his calculations. Moreover, other evidence introduced set forth a summary of profits made from nine other contract jobs with Southern Bell including a profit in excess of 10% for a very similar building.
Southern Bell argues that these introduced pieces of evidence did not tend to prove or disprove lost profits, but were simply estimates based on bid prices from subcontractors. However, we believe the evidence was sufficient to go to the jury under Adams v. Dreyfus, supra, especially when one considers that the chief estimator also testified that his line items were actual quotations from qualified subcontractors upon which he could normally rely.
The Telephone Company also argues that the calculated profit is fatally defective because it excludes the fixed overhead costs of the contractor's home office. There is a dearth of Florida law on this subject but we are of the opinion that we need not examine this issue because in the case at bar the lack of inclusion of any such fixed overhead was not objected to at trial.
We turn next to the question of whether a contract ever came into existence in the light of the failure of the Telephone Company to execute a copy. As to this question, we are of the opinion that there was sufficient evidence in the record to make this a jury question. Quite apart from the letter accepting the bid,[2] several other documents pertaining to the construction were forwarded to the contractor by Southern Bell or its agents and in sum we believe them sufficient to raise issues of fact which would preclude a directed verdict on this issue.
REVERSED AND REMANDED IN ACCORDANCE HEREWITH.
HERSEY and GLICKSTEIN, JJ., concur.
NOTES
[1] See also Mori v. Matsushita Electric Corp. of America, 380 So.2d 461 (Fla.3d DCA 1980).
[2] We note that the letter merely postpones work at the site rather than suggesting the acceptance is dependent upon an independent contract being signed. See 11 Fla.Jur.2d, Contracts § 78.