454 So.2d 601 (1984)
U.S. HOME CORPORATION, Appellant,
v.
SUNCOAST UTILITIES, INC., a Florida Corporation, Appellee.
No. 83-1746.
District Court of Appeal of Florida, Second District.
June 29, 1984.
Rehearing Denied September 5, 1984.
*602 Alfred E. Froh of Robinson, Macpherson, Harper, Kynes, Batt, Geller & Watson, P.A., Clearwater, and Joel R. Tew of Helms, Mulliss & Johnston, Tampa, for appellant.
V. James Dickson of Jacobs, Robbins, Gaynor, Hampp, Burns, Cole & Shasteen, P.A., St. Petersburg, for appellee.
SCHEB, Judge.
The trial court awarded Suncoast Utilities, Inc. a final judgment for $171,492, plus interest of $84,031.08, in its breach of contract action against appellant U.S. Home Corporation. U.S. Home contends the court erred in finding it liable to Suncoast and in computing damages and prejudgment interest. We affirm the judgment as to liability but remand for recomputation of damages and prejudgment interest.

I. The Facts.

To comprehend the issues raised by U.S. Home, it is essential to review a chronology of the operative facts which began in 1978. In that year John Tunstall formed Suncoast to provide utility and site preparation services for U.S. Home's projects in Pinellas County. While not contractually bound to work exclusively for U.S. Home, throughout its operation Suncoast performed services only for that corporation. U.S. Home was fully aware that Suncoast worked solely on its projects.
*603 In 1978 Suncoast and U.S. Home also executed several sets of lengthy contract documents for the various projects. Suncoast was to render site preparation services for U.S. Home on its development projects in both Pinellas and Pasco Counties. Each set of documents contained essentially the same extensive conditions furnished by U.S. Home, including a provision that the agreements could be altered, amended, or repealed only in writing. The only major differences were the various bid lists submitted by Suncoast and the special conditions detailing the specific work to be done on each project.
U.S. Home frequently had Suncoast "pull off" one job to go to another. Suncoast moved its men and equipment between the two counties to comply with U.S. Home's requests and to meet that corporation's changing needs and schedules. U.S. Home did not always execute written change orders pursuant to the contract documents' conditions when it requested Suncoast to move between job sites.
On February 23, 1979, U.S. Home sent a letter to Suncoast confirming its cancellation of one Pinellas project. Officers of both parties signed and approved this agreement, which incorporated mutual covenants concerning the effect of the cancellation on the other Pinellas and Pasco projects.
On February 28, 1979, the parties executed a written purchase order agreement for the movement of dirt between two sites (the Oldsmar project). This document specified that dirt would be removed at a unit cost of $1.85 per cubic yard. Suncoast, by letter, subcontracted this job at a removal rate of $1.50 per cubic yard. Neither the document nor the letter contained terms of the quantity of dirt to be removed, the total payments to be made, or the time in which the work was to be performed. In two instances Tunstall testified that 70,000 to 100,000 cubic yards were to be hauled. In another instance he said he believed the contract contemplated Suncoast hauling in excess of 70,000 to 80,000 cubic yards. A letter written by a U.S. Home executive indicated that the $1.85 per cubic yard rate was based on the removal of approximately 70,000 cubic yards of dirt.
On April 11, 1979, U.S. Home gave Suncoast written notice of termination of the Oldsmar project after only 13,000 cubic yards of dirt had been hauled. U.S. Home admitted it never paid Suncoast anything on this project, but it acknowledged its obligation to pay for the work completed. On April 25, 1979, U.S. Home also terminated Suncoast on a Pasco County project when that project was almost complete.
Suncoast attempted to pick up a check from U.S. Home for approved draw requests on three of the Pasco projects on April 27, 1979. U.S. Home paid Suncoast for only one and refused to make any further payments on the other two, although payments on them were due. After Suncoast was not paid on schedule on the Oldsmar and two Pasco projects, it sought assurances from U.S. Home that it would be paid for the work already completed on these undertakings. Additionally, Suncoast sought assurance that it would not be terminated on the remaining three Pinellas County projects (the Countryside projects), as it had been on the Oldsmar dirt haul and the one Pasco project. When U.S. Home declined to make such assurances, Suncoast suspended operation in Pinellas County, indicating that it would resume work when U.S. Home gave the requested assurances.
On May 2, 1979, U.S. Home terminated Suncoast on its last Pasco County project. Then, on May 11, 1979, it formally, in writing, terminated Suncoast on the Countryside projects. At the time of this termination, all outstanding payment requests on the Countryside projects had been paid.

II. Trial Court's Findings.

In these consolidated cases, Suncoast, in one action, sued U.S. Home for breach of contract on the Countryside projects. In another, Suncoast filed a cross-claim against U.S. Home for breach of the Oldsmar dirt haul and indemnification for its *604 indebtedness to the subcontractor for the movement of dirt.[1]
In a nonjury trial of these consolidated cases, the trial judge held that U.S. Home breached its contract with Suncoast for the Countryside work, entitling Suncoast to $123,992 in damages. The court also found that U.S. Home breached the Oldsmar contract and awarded Suncoast $47,500 on that project. The trial judge then awarded Suncoast prejudgment interest of $84,031.08 for the breach of all the contracts. The court determined that Suncoast did not breach any of its contract obligations to U.S. Home. Finally, the court concluded that Suncoast reasonably demanded adequate assurance that U.S. Home would perform on the Countryside projects and "reasonably suspended work pending receipt" of such assurance.

III. Appellant's Contentions.

Appellant U.S. Home raises several points on appeal. The principal thrust of its contentions as to liability is that the trial court erred in holding that it breached its obligations to Suncoast by refusing to give Suncoast adequate assurance of performance on the Countryside projects. U.S. Home argues that the court erred in applying the doctrine of adequate assurance, since this theory has not been adopted in Florida except in cases on the sale of goods.
Concerning damages, U.S. Home argues that the trial court erred in assessing damages on the Oldsmar project based on the contemplated, rather than the actual, removal of dirt. It asserts that the Oldsmar document was a purchase order it could cancel at any time. U.S. Home also contends the evidence was insufficient to support the award of damages on the Countryside projects.
Regarding prejudgment interest, U.S. Home asserts that no interest should have been assessed on the Countryside projects as the amount of damages, if any, was unliquidated. It also argues that the court erroneously applied a twelve percent prejudgment interest rate from July 1, 1979, through July 1, 1982.

IV. Resolution of Issues.

A. Liability.

Despite the execution of a series of contract documents, the trial court had substantial, competent evidence before it that the parties treated all the projects as one overall contract. The evidence discloses that U.S. Home initially breached its Oldsmar obligations by its unilateral termination. Further, it breached the two Pasco agreements by refusing to make payments due Suncoast on these projects. Suncoast was therefore justified in suspending performance on the Countryside projects. In turn, U.S. Home became liable to Suncoast for damages for its anticipatory breach of these latter projects. See Hospital Mortgage Group v. First Prudential Development Corp., 411 So.2d 181, 182 (Fla. 1982); Mori v. Matsushita Electric Corp., 380 So.2d 461, 465 (Fla. 3d DCA), cert. denied, 389 So.2d 1112 (Fla. 1980). Consequently, where, as here, there is substantial, competent evidence to sustain a trial court's holding, we must affirm. Helman v. Seaboard Coast Line Railroad, 349 So.2d 1187, 1189 (Fla. 1977); Wash-Bowl, Inc. v. Wroton, 432 So.2d 766, 767 (Fla. 2d DCA 1983); Gulf Coast Docks, Inc. v. Simon, 122 So.2d 414 (Fla. 2d DCA 1960).
Futhermore, even assuming the appellant is correct in its contention that the trial court erred in applying the doctrine of adequate assurance, we need not address that issue. The trial court's reasoning is not binding upon this court. Applegate v. Barnett Bank, 377 So.2d 1150 (Fla. 1979); In re Estate of Yohn, 238 So.2d 290 (Fla. 1970). A trial court's decision, even when based on an erroneous theory, must be affirmed if the evidence or an alternative theory supports its decision. Applegate, *605 377 So.2d at 1152; Moore v. City of St. Petersburg, 281 So.2d 549 (Fla. 2d DCA), cert. denied, 289 So.2d 730 (Fla. 1973). Here, as noted above, the evidence amply supports the court's decision as to liability.

B. Award of Damages.

1. Oldsmar project.
Although U.S. Home is liable for breach of the entire contract, Suncoast's evidence only established that it sustained damages on the Oldsmar project. Taken as a whole, the evidence clearly revealed the price per unit to be paid, the quantity of dirt to be hauled, and the costs to Suncoast to subcontract the work to another contractor. U.S. Home admitted owing Suncoast compensation for the 13,000 cubic yards of dirt which had been hauled. Tunstall's testimony showed that the project's price per unit was based on a minimum of 70,000 cubic yards of dirt. Moreover, the letter of understanding written by the U.S. Home executive demonstrated the price per unit was based on the removal of approximately 70,000 cubic yards of dirt. From these facts Suncoast's anticipated profits for hauling 70,000 cubic yards of dirt on the Oldsmar project were reasonably ascertainable. Twyman v. Roell, 123 Fla. 2, 7, 166 So. 215 (1936); Conner v. Atlas Aircraft Corp., 310 So.2d 352, 354 (Fla. 3d DCA), cert. denied, 322 So.2d 913 (Fla. 1975).
We think the trial court erred in calculating the amount of damages for this project. It is obvious the court computed its $47,500 award on the anticipated removal of 80,000 rather than 70,000 cubic yards of dirt. Although the court correctly allowed $1.85 per cubic yard for the 13,000 cubic yards of dirt actually hauled, it should have calculated a $.35 per cubic yard profit on 57,000 instead of 67,000 cubic yards of dirt. Thus, Suncoast is entitled only to $44,000 in damages on the Oldsmar project.

2. Countryside projects.
Concerning the damages awarded for U.S. Home's breach of the Countryside projects, it is unclear how the trial court arrived at the final figure of $123,992. To begin with, the evidence revealed all payment requests on these three projects up to the date of U.S. Home's breach had been paid; therefore, all costs incurred in partial performance had been satisfied.
Nevertheless, under the general rule of damages, Suncoast would ordinarily be entitled to recover the profit it could have realized had the Countryside projects been completed. Poinsettia Dairy Products, Inc. v. The Wessel Co., 123 Fla. 120, 130, 166 So. 306 (1936); Sullivan v. McMillan, 26 Fla. 543, 598, 8 So. 450 (1890); Jackson v. Riley, 427 So.2d 255 (Fla. 5th DCA 1983); and Ballard v. Krause, 248 So.2d 233 (Fla. 4th DCA 1971). However, no evidence was introduced to support Tunstall's testimony in which he concluded that Suncoast would have realized a fifteen to twenty percent profit had the contract been completely performed. Damages for lost profits must be reasonably certain and established by competent proof. Florida Outdoor, Inc. v. Stewart, 318 So.2d 414, 415 (Fla. 2d DCA), cert. denied, 333 So.2d 465 (Fla. 1975); Ballard, 248 So.2d at 235. Here, the estimate of lost profits was based on mere speculation. Florida Outdoor, Inc., 318 So.2d at 415; Ballard, 248 So.2d at 235. And, although Tunstall, in his testimony, assumed that Suncoast's profits were calculated from certain company records, these records were not introduced. See Edward L. Nezelek, Inc. v. Southern Bell Telephone & Telegraph, 383 So.2d 979 (Fla. 4th DCA 1980).
We recognize that a trial judge is vested with reasonable discretion in awarding damages where they cannot be precisely determined. Clearwater Associates v. Hicks Laundry Equipment Corp., 433 So.2d 7 (Fla. 2d DCA 1983); John Hancock Mutual Life Insurance Co. v. Mark-A, Inc., 324 So.2d 674 (Fla. 2d DCA 1975). Nevertheless, we think this case is distinguishable in that Suncoast did not show either by Tunstall's testimony or any other evidence the factors upon which it based its claim for lost profits. Accordingly, Suncoast is entitled only to nominal damages *606 on the Countryside projects. Florida Outdoor, Inc., 318 So.2d at 415.

C. Award of Prejudgment Interest.

We next address the question of prejudgment interest. Our concern here is limited to damages on the Oldsmar project, since Suncoast is entitled only to nominal damages on the Countryside work.
Although generally unliquidated damages are not entitled to prejudgment interest, once it is determined a contract debt is due, prejudgment interest may be awarded. Parker v. Brinson Construction Co., 78 So.2d 873, 874 (Fla. 1955); Sullivan v. McMillan, 37 Fla. 134, 143, 19 So. 340 (1896). Such interest is allowed from the date the debt is due. Peter Marich and Associates, Inc. v. Powell, 365 So.2d 754 (Fla. 2d DCA 1978); Vacation Prizes, Inc. v. City National Bank, 227 So.2d 352 (Fla. 2d DCA 1969). Here, the only dispute concerning the Oldsmar project was whether the agreement was executed as opposed to executory. The trial court's finding that U.S. Home breached its obligation to Suncoast on the Oldsmar project settled this dispute. Parker, 78 So.2d at 874; Sullivan, 37 Fla. at 143, 19 So. 340; Peter Marich & Associates, Inc., 365 So.2d at 756; Vacation Prizes, 227 So.2d at 353.
The trial court, although correct in awarding prejudgment interest on the Oldsmar project, did not make an explicit finding as to the date payment was due. See Sullivan, 37 Fla. at 143, 19 So. 340; Peter Marich & Associates, Inc., 365 So.2d at 756. Moreover, as U.S. Home points out, the trial court erred in assessing interest at twelve percent per annum from July 1, 1979, through July 1, 1982. See § 687.01, Fla. Stat. (1981).

V. Judgment of this Court.

We find no merit in U.S. Home's remaining points.
Accordingly, we affirm the trial court's holding as to U.S. Home's liability on all the projects. We reverse and remand on the issues of damages and calculation of prejudgment interest.
On remand, the trial court should reduce the award to Suncoast to nominal damages on the Countryside projects. The court should also reduce the award to Suncoast to $44,000 on the Oldsmar dirt haul and revise its judgment to show the date upon which that sum was due.
Prejudgment interest should be awarded at a rate of six percent prior to July 1, 1982, pursuant to section 687.01, Florida Statutes (1981). After that date, interest should be awarded at a twelve percent rate up to the date of the revised judgment. See § 687.01, Fla. Stat. (Supp. 1982).
BOARDMAN, A.C.J., and LEHAN, J., concur.
NOTES
[1] Here Suncoast is not seeking damages for breach of any obligations on the Pasco projects. The record implies the parties previously entered into a settlement and release agreement as to those undertakings.