585 So.2d 1103 (1991)
Paul BELVIN, Appellant,
v.
STATE of Florida, Appellee.
No. 90-00368.
District Court of Appeal of Florida, Second District.
September 11, 1991.
*1104 Marion Lucas Fleming, St. Petersburg, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Anne Y. Swing, Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Judge.
Appellant, Paul Belvin, pled no contest to the charge of possession of rock cocaine, reserving his right to appeal the order denying his motion to suppress. Appellant argues in this appeal, as he did at his motion to suppress hearing, that he was improperly detained during the execution of a search warrant. Appellant does not challenge the subsequent search of his person. We find appellant's detention under the facts of this case proper and affirm.
On July 27, 1989, at approximately 7:00 p.m., a number of officers of the Sarasota Police Department approached a residence at 1560 21st Street in Sarasota for the purpose of executing a search warrant on the premises. The officers were wearing black shirts with the word "police" in bright yellow letters on the front and back of the shirts. They were also wearing hats with the word "police" on them. The affidavit upon which the search warrant was based stated that a surveillance of the residence at 1560 21st Street had been conducted after confidential sources informed the police that drug sales were being conducted from the premises. The affiant stated in the affidavit that he "observed numerous persons enter and exit the said residence" and "observed a high volume of traffic enter the residence within a (30) thirty minute time frame."
The residence at 1560 21st Street is one of a number of similar small, rectangular, single-family residences grouped in close proximity to each other. The residence at 1560 21st Street has a front door on the north side and another door on the west side. The search warrant stated that there was probable cause to believe that the sale of cocaine was being accomplished on the premises by the "occupants of 1560 21st Street." The search warrant directed the executing officers to "diligently SEARCH said location, and any and all PERSONS found therein, who are reasonably believed to be involved in the crime or crimes, as well as any vehicles situated on the said described premises or immediately adjacent thereto... ."
When Officer Castro, a member of the search team of the Sarasota Police Department, approached the premises to be searched, he observed appellant within two to six feet of the southwest corner of the premises. When appellant observed the officers, he grabbed his bicycle which was leaning against the southwest corner of the building at 1560 21st Street and began to run from the premises with his bicycle. Officer Castro stopped appellant to identify *1105 him and determine why he was running from the premises. Upon learning appellant's name and date of birth, Officer Castro requested a computer check on appellant and discovered the outstanding arrest warrants for him. Appellant was then arrested on the basis of the warrants and searched pursuant to that arrest. The rock cocaine was discovered in his pocket.
In the order denying appellant's motion to suppress, the trial judge made no specific finding as to whether appellant was within the curtilage of the premises to be searched at the time the officers first observed him or at times relevant to his detention. The trial judge's order did contain findings that appellant "was observed adjacent to 1560 21st Street" and that appellant "upon observing the police officers, immediately grabbed his bike which was leaning against this residence and fled." The trial judge approved appellant's detention, reasoning that:
An investigatory stop by law enforcement requires a reasonable or well-founded suspicion of criminal activity on the part of the Defendant... .
In this case, when an experienced police officer observes an individual fleeing from an area immediately adjacent to a house from which crack cocaine is being sold, the officer has a well-founded suspicion that the Defendant is involved in criminal activity... .
Based upon the facts of this case and the findings by the Court that the arresting officer, Officer Kenneth Castro, had a well-founded suspicion that the Defendant, Paul Belvin, was involved in criminal activity, the Defendant's Motion to Suppress is hereby denied.
While this holding seems contrary to our holding in Mosley v. State, 519 So.2d 58 (Fla. 2d DCA 1988), we nevertheless affirm appellant's conviction because affirmance is required when the ruling is correct, albeit for the wrong reasons. Stuart v. State, 360 So.2d 406 (Fla. 1978); U.S. Home Corp. v. Suncoast Util., 454 So.2d 601 (Fla. 2d DCA 1984); Moudy v. Southland Distrib. Co. of St. Petersburg, Inc., 452 So.2d 1045 (Fla. 2d DCA 1984).
The record irrefutably establishes that Officer Castro was able to properly conclude that appellant was within the curtilage of the premises being searched when Officer Castro observed appellant standing two to six feet from the corner of the residence and, upon seeing the officers approach, immediately grab his bicycle leaning against the residence and attempt to flee. At that moment, Officer Castro may not have had a reasonable suspicion that appellant was involved in criminal activity so as to validate a search of appellant's person. However, Officer Castro did have a valid basis upon which to temporarily detain appellant. Officer Castro was acting pursuant to a valid search warrant which commanded him to search the premises and persons found on the premises involved in criminal activity. The premises being searched were known and described in the affidavit and search warrant as a place where there was a high degree of drug activity with numerous persons going to and from the premises in regard to that drug activity.
We, therefore, conclude that Officer Castro, having observed appellant on the premises to be searched, attempting to flee from the officers, would have been remiss in his duties had he not detained appellant to determine his identity and his reason for being on the premises. Otherwise, officers executing a search warrant under these or similar circumstances could be faced with wholesale departures of persons from premises to be searched, and the officers, while executing the search warrant, would be unable to detain such persons to facilitate the execution of the search warrant, to secure the premises and/or to determine the reason for the presence of those persons on the premises.
We believe our conclusions are supported by Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) and Wilson v. State, 547 So.2d 215 (Fla. 4th DCA 1989).
We distinguish this court's holding in Julian v. State, 528 So.2d 427 (Fla. 2d DCA 1988). It must be emphasized that the sole issue involved in this case and *1106 upon which we base our holding is whether the detention of appellant by the officers armed with the search warrant was proper. We are not concerned here with whether the officers had a reasonable suspicion of appellant's involvement in criminal activity so as to warrant a search of his person. Those are the very factors that distinguish this case from our holding in Julian. In Julian, the law enforcement officers involved in the search and subsequent arrest of Julian were armed with a search warrant very similar to that involved here. It also authorized the search of a private dwelling and persons thereon reasonably believed to be connected with illegal activity. In Julian, however, the executing officers, before arriving at the premises to be searched, formulated a plan to detain and search any persons found on the premises. Julian was found on the premises to be searched and, without any reasonable suspicion that he was involved in criminal activity, the officers detained and searched Julian. This court in Julian properly held that the search of Julian was improper. We also correctly held in Julian that "[t]he appellant's mere presence within the curtilage of the mobile home, however, could not supply the reasonable connection to suspected narcotics activity which the terms of the warrant required as a predicate to his being searched." 528 So.2d at 429 (emphasis supplied). While in Julian we did not directly address the validity of the detention of Julian aside from the search, we did, however, allude to the validity of such a temporary detention of occupants of premises subject to a valid search warrant when we said:
In addition, Officer Allen's testimony that the appellant resided at the mobile home is irrelevant because it is unclear as to when the police obtained this information. Even if we assume that the police learned that the appellant lived at the mobile home before they detained him, a search of his person would not have been permitted until contraband had actually been found within the mobile home. See Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Since the search of the mobile home revealed no contraband, no illegal activity could be reasonably connected to the appellant. The express terms of the search warrant, however, required such a reasonable connection as a condition to searching a person found upon the premises.
528 So.2d at 429, 430 (emphasis supplied).
We reject any interpretation of Julian that would require, in order to temporarily detain and identify persons found on premises subject to a valid search warrant, some prior knowledge on the part of officers executing the search warrant that the persons found thereon were either residents of the premises or engaged in criminal activity. We do hold, as we did in Julian, that after initially detaining persons found on such premises, the officers must discover something during that temporary detention that gives them reasonable cause to proceed further and search the persons detained. The United States Supreme Court in Summers so held when it stated:
If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search [of the premises] is conducted.
Because it was lawful to require respondent to re-enter and to remain in the house until evidence establishing probable cause to arrest him was found, his arrest and the search incident thereto were constitutionally permissible.
452 U.S. at 704, 705, 101 S.Ct. at 2595, 2596 (footnotes omitted).
Our analysis and resulting holding in this case is buttressed by the fact that the Supreme Court in Summers uses the terms "resident" and "occupant" interchangeably in its opinion and holding when *1107 speaking of the permissible detention of persons found on premises subject to a search warrant. Thus, in determining the validity of a temporary detention of persons found on premises being searched pursuant to a search warrant, we conclude it makes no difference whether the persons so temporarily detained are "residents" or mere "occupants" of the premises at the time the search warrant is executed.
Our colleagues on the fourth district in Wilson, 547 So.2d at 215, have reached the same conclusions we reach here. However, in doing so, both the majority and the dissent in Wilson apparently misconstrued and misinterpreted Julian as holding to the contrary. As we have sought in this opinion to emphasize, the issue before us and before the court in Wilson concerns the validity of a detention during the execution of a search warrant and a subsequent search of the person detained premised upon reasonable cause determined during the course of the detention. Julian, on the other hand, involved a search of a detained person without reasonable cause to support the search having been discovered during the preliminary detention.
Affirmed.
SCHOONOVER, C.J., and PATTERSON, J., concur.