KELLY, Judge.
Carolina Consulting Corporation, d/b/a Barrier Wall of South Florida (CCC) appeals the final judgment entered against it and in favor of Ajax Paving Industries, Inc., in consolidated actions for breach of two road construction contracts. We conclude that Ajax wrongfully refused to perform under one of the contracts, thus entitling CCC to assert the right to set off the damages for breach of that contract against the amounts it owed to Ajax under a separate contract. Accordingly, we reverse the judgment in favor of Ajax and remand for entry of a judgment in favor of CCC.
CCC was the general contractor on two Florida Department of Transportation projects, one located in Collier County and the other in Pasco County. In mid-2005, CCC entered into subcontracts with Ajax for paving work required on both projects. Approximately a year later, in June 2006, when Ajax had completed its work on the Pasco County project, CCC and Ajax got into a dispute regarding the amount CCC owed Ajax for its work on that project. In the meantime, work had yet to begin on the Collier County project.
*503 The Collier County project had been scheduled to start at the same time as the Pasco County project; however, a series of delays caused the start date to be extended for approximately a year. Finally, in April 2006, CCC notified Ajax that the Collier County project would begin on May 15, 2006, and it requested that Ajax provide certain information that CCC needed before the paving work could begin. Receiving no response, three weeks later CCC sent a second request for the information. This was met with, among other things, a request for additional compensation due to an increase in the cost of materials that had occurred during the delay.
On June 6, 2006, CCC notified Ajax that it should be prepared to begin its portion of the work on the project in mid-to-late July. Ajax responded by email stating that because it had not received a response to its request for a price increase, it had booked other work and, although it did not look like it could perform the work on the Collier County project, it nevertheless hoped to “make this work.” A letter attached to the email essentially reiterated in somewhat more detail the message contained in the email.
On August 8, 2006, CCC emailed Ajax asking whether Ajax intended to honor the Collier County subcontract. Ajax responded that it would not perform until it received payment in full for the Pasco County project and it asserted that it was entitled to an increase in price because of the delay in starting the project. Later that day, Ajax sent a second email stating that it would need a change order for $88,918, it would need to be paid in full for the Pasco County project, and that CCC would need to prove its credit worthiness in order for Ajax to begin work. On August 24, CCC attempted to schedule a preparing conference; however, Ajax again responded that it was not performing any work until it was paid in full for the Pasco County project and it received a change order for the price increases.
On September 6, 2006, CCC advised Ajax that it would not issue a change order and that it was going to enforce the Collier County subcontract. CCC subsequently sent Ajax a notice to cure pursuant to the terms of the subcontract. In response, on September 14, Ajax sent a letter asserting that CCC had breached the Collier County subcontract and it again asserted it would not perform until it was paid in full for the Pasco County project, it received adequate assurances of CCC’s ability and willingness to pay for the Collier County project, and it received a change order for increases in material costs caused by the delay. In response, CCC terminated the Collier County subcontract and then hired another subcontractor to replace Ajax at an increased rate.
A few days after Ajax sent the September 14 letter, it sued CCC and its surety for the money it claimed CCC owed it for the Pasco County project. CCC answered, asserted that it had a right to set-off based on Ajax’s wrongful refusal to perform on the Collier County project, and it counterclaimed for breach of the Collier County subcontract. Ajax then filed a second suit against CCC alleging that it wrongfully terminated the Collier County subcontract. The two lawsuits were eventually consolidated. After a nonjury trial, the court found in favor of Ajax. As to the Collier County project, the court found that Ajax was entitled to suspend performance until it received adequate assurance that it would be paid for its work on the project, and thus, CCC wrongfully terminated its subcontract with Ajax, and it awarded damages to Ajax in the amount of $104,691. As to the Pasco County project, *504 the court awarded Ajax $118,753.66 for its work on the project.
CCC argues that the trial court erred in finding that it improperly terminated the Collier County subcontract. CCC contends the termination was proper because Ajax breached the subcontract when it conditioned its performance on, among other things, the receipt of adequate assurances from CCC regarding its willingness and ability to pay for Ajax’s work on that project. We agree with CCC that under these particular facts, Ajax was not entitled to condition its performance on the receipt of adequate assurances.
When a contract involves the sale of goods, the Uniform Commercial Code provides that a merchant has the right to demand adequate assurance of performance “[wjhen reasonable grounds for insecurity arise with respect to the performance of’ the other party. § 672.609(1), Fla. Stat. (2005). Once adequate assurance of performance is demanded, the other party to the transaction must provide adequate assurance within a reasonable time, not to exceed thirty days, or the contract is repudiated. § 672.609(4).
This provision of the Code is stated as a general rule in section 251(1) of the Restatement (Second) of Contracts (1981) which provides that:
Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would of itself give the obligee a claim for damages for total breach [of contract], the obligee may demand adequate assurance of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed exchange until he receives such assurance.
The comment to section 251 states that “[t]he rule is a generalization, applicable without regard to the subject matter of the contract, from that of Uniform Commercial Code § 2-609.” This court has previously declined to specifically address the issue of whether the doctrine of adequate assurance as set forth in section 251 of the Restatement applies in the context of a construction contract. See U.S. Home Corp. v. Suncoast Util., Inc., 454 So.2d 601, 604 (Fla. 2d DCA 1984). We likewise decline to do so here because we conclude that even assuming it is applicable, under the facts of this case Ajax did not demonstrate that it had a reasonable basis to demand adequate assurance from CCC because the Collier County project was secured by a payment bond issued pursuant to section 337.18, Florida Statutes (2005).
Section 337.18(l)(a) guarantees payment to “all persons ... furnishing labor, material, equipment, and supplies for work provided in the contract.” See also Restatement (Third) of Suretyship & Guar. § 71 cmt. e (1996) (recognizing that in construction contracts a statutory payment bond provides assurance that the project will be completed in accordance with the contract and that all laborers and suppliers will be paid). Although the evidence supports the trial' court’s determination that Ajax had legitimate reasons to fear CCC might not honor its obligation to pay Ajax, we nevertheless conclude that it was not reasonable for Ajax to believe it would not eventually be paid for its work on the project given the existence of the statutory payment bond.[1] Even if we assume Ajax was entitled to demand adequate assurance from CCC, the result would be the same be *505 cause the bond would satisfy this requirement as it guaranteed payment. Because Ajax was not entitled to demand adequate assurance, its refusal to perform constituted a breach that gave CCC the right to terminate the subcontract.
Because the trial court concluded that Ajax was entitled to demand adequate assurance, and therefore CCC did not have the right to terminate the subcontract, it denied CCC’s claim for set-off. However, because we have determined that Ajax’s actions constituted a breach of the subcontract, we also reverse the trial court’s determination that CCC was not entitled to a set-off. Under the terms of both subcontracts, upon Ajax’s breach of the subcontract, CCC had the right to hire another subcontractor to perform the work and then deduct the cost from any amount owed to Ajax in connection with the Pasco County subcontract. At trial, the parties stipulated that if CCC had the right to set-off, the amount to be set off was $235,523.35. Accordingly, on remand, CCC is entitled to a set-off in that amount against the amount awarded to Ajax for its work on the Pasco County project. Further, because Ajax breached the subcontract, CCC will be entitled to a judgment in its favor on its counterclaim for breach of contract. We leave it to the trial court to determine the amount of that judgment taking into account the parties’ stipulation that CCC was at a minimum entitled to $235,523.35 in damages for Ajax’s breach of the subcontract.
Reversed and remanded.
ALTENBERND and CRENSHAW, JJ., Concur.

. We note that Ajax offered no evidence that the surety was insolvent or that some other circumstance existed that might have given it reason to believe it would not be paid notwithstanding the bond.